JOHN D. LATIMER & ASSOCIATES, INC. v. HOUSING AUTHORITY OF THE CITY OF DURHAM, NORTH CAROLINA

No. 8114SC1327

(Filed 7 December 1982)

1. **Quasi Contracts and Restitution § 1.1— conduct indicating different understanding from express contract—implied contract arising**

    In an action which arose from plaintiff's furnishing architectural and engineering services for defendant, even if an express contract may have at one time existed between the parties, plaintiff's evidence clearly showed that as plaintiff's work on the project progressed, plaintiff requested payment and was assured that it would be paid for its work and such conduct clearly indicated a different understanding indicating an implied contract could have arisen between the parties.

2. **Quasi Contracts and Restitution § 2.2— recovery under quantum meruit—sufficiency of showing defendant benefited**

    In an action where plaintiff architectural and engineering firm asserted an agreement that it was to be compensated for preparing plans for defendant's use in applying for H.U.D. approval for a housing project, and plaintiff showed that plaintiff's plans were received and used by defendant in defendant's H.U.D. application, there was a sufficient showing of benefit to defendant from plaintiff's work.

3. **Quasi Contracts and Restitution § 2.1— implied contract—reliance on defendant's chief executive officer reasonable**

    In an action for recovery of architectural and engineering services, where plaintiff's evidence tended to show that plaintiff dealt extensively with defendant's chief executive officer, not only in the project involved in the case, but also on other similar projects, plaintiff's reliance on the officer's authority to bind defendant was reasonable.

APPEAL by defendant from *Herring, Judge.* Judgment entered 9 June 1981 in Superior Court, DURHAM County. Heard in the Court of Appeals 21 September 1982.

In its complaint, plaintiff alleged in Count I that James E. Kerr, defendant's Executive Director, entered into an oral contract with plaintiff wherein plaintiff was to furnish architectural

and engineering services for defendant in connection with a project undertaken for the construction of a housing development for the elderly in Durham; that plaintiff provided defendant with all services requested by defendant until plaintiff was advised by defendant that defendant would be unable to complete the project; that at the time defendant advised plaintiff defendant would be unable to complete the project, there was due and owing plaintiff the sum of $105,879.89; and that defendant refused to pay plaintiff for its services. Under Count II, plaintiff alleged in the alternative that defendant, by obtaining and accepting plaintiff's services, impliedly agreed to pay for plaintiff's services. Defendant answered denying plaintiff's essential allegations. At trial, both at the close of plaintiff's evidence and at the close of all the evidence, defendant moved for a directed verdict. These motions were denied. The jury answered the issues, in pertinent part, as follows:

> 1. Did the plaintiff, John D. Latimer & Associates, Inc., enter into an oral agreement with James Kerr as Executive Director of the defendant, Housing Authority of the City of Durham, whereby plaintiff would provide the defendant with architectural services for a housing project, and that payment for those architectural services would be contingent upon approval of the housing project by the Department of Housing and Urban Development?

> ANSWER: NO.

> . . .

> 5. Did the plaintiff provide architectural services to the defendant, Housing Authority of the City of Durham, under such circumstances that the defendant should be required to pay for them?

> ANSWER: YES.

> 6. If so, what amount, if any, is the plaintiff entitled to recover of the defendant, Housing Authority of the City of Durham?

> ANSWER: $65,000.00.

Following the verdict, defendant moved for judgment notwithstanding the verdict. This motion was denied. From judgment entered on the verdict, defendant appealed.

*Mount, White, King, Hutson, Walker & Carden, P.A., by Lillard H. Mount, William O. King and James H. Hughes, for plaintiff-appellee.*

*Daniel K. Edwards for defendant-appellant.*

WELLS, Judge.

By its properly preserved exceptions and assignments of error, defendant raised questions as to the sufficiency of the evidence to withstand defendant's motions, made pursuant to Rule 50 of the Rules of Civil Procedure, for a directed verdict and for judgment notwithstanding the verdict.[1] Defendant's argument raises three aspects of the sufficiency of the evidence to support the submission of the issue as to an implied contract between plaintiff and defendant, so as to entitle plaintiff to recover under principles of *quantum meruit.* First, defendant argues that plaintiff and defendant reached an express contract which included as a condition precedent to plaintiff's entitlement to compensation the approval of the project by the Department of Housing and Urban Development (H.U.D.), that such approval was never obtained, and therefore no implied contract ever arose. Second, defendant argues that defendant received no benefit from plaintiff's services, thus defeating plaintiff's entitlement to a recovery under *quantum meruit.* Third, defendant argues that its director, Kerr, had no authority to obligate defendant to compensate plaintiff absent H.U.D. approval of the project. The evidence, which we will summarize below, was in substantial conflict on the question of whether H.U.D. approval was understood to be a condition precedent to plaintiff's entitlement to compensation. We perceive no such substantial conflicts in the evidence as to defendant's benefit from plaintiff's work on the project or on Kerr's authority to obligate defendant to plaintiff.

---

1. Although defendant has argued in its brief that the verdict is inconsistent and does not support the judgment, all of defendant's assignments of error relate to the sufficiency of the evidence to support the verdict, none of them relating to the entry of judgment. The question of the sufficiency of the verdict to support the judgment is therefore not before us.

The rules as to the sufficiency of evidence to withstand a motion for directed verdict are well established. On such a motion by defendant at the close of plaintiff's evidence in a jury case, plaintiff's evidence must be taken as true and considered in the light most favorable to plaintiff, giving plaintiff the benefit of every reasonable inference which may legitimately be drawn therefrom. *See Home Products Corp. v. Motor Freight, Inc.,* 46 N.C. App. 276, 264 S.E. 2d 774 (1980), *disc. rev. denied,* 300 N.C. 556, 270 S.E. 2d 105 (1980), and cases cited therein. On such a motion made at the close of all the evidence, any of the defendant's evidence which tends to contradict or refute the plaintiff's evidence is not considered, but other evidence presented by defendant which tends to clarify plaintiff's case may be considered. *Home Products Corp., supra.* These rules also apply to defendant's motion for judgment N.O.V. *Home Products Corp., supra.*

Briefly summarized, plaintiff's evidence, as tested by the foregoing rules, tended to show the following. Plaintiff is a large firm specializing in industrial and institutional architecture. Plaintiff's firm has been in business in Durham for about 28 years. In August, 1976, Mr. James Kerr, Executive Director of defendant, approached plaintiff's president, Latimer, requesting assistance in determining evaluation of a site in Durham for a housing project. The project initially contemplated the construction of 110 housing units for the elderly. Plaintiff carried out an initial site evaluation, and on 10 September 1976 sent a letter to Kerr giving plaintiff's impressions of the site, favorably recommending the site for the proposed project. At the request of Kerr, plaintiff then further evaluated the site to determine estimated cost of street improvements, water and sewer extensions and site preparation necessary to accommodate 110 housing units. Plaintiff furnished this evaluation, in writing, to Kerr on or about 21 October 1976. Subsequently, at Kerr's request, plaintiff prepared a preliminary proposal for the project, showing a site location plan, floor plans and perspective, and cost estimates on all aspects of constructing the project. This proposal was furnished defendant on or about 19 April 1977. Subsequently, meetings and conferences between defendant and plaintiff resulted in a modified proposal to H.U.D. to construct 85 housing units on the site. On 2 June 1978, defendant wrote to plaintiff, informing plaintiff that H.U.D. had accepted the modified site plan, but had suggested extensive design

changes in the housing units. Defendant requested further discussion with plaintiff regarding the suggested design changes. Negotiations with H.U.D. continued, resulting in a H.U.D. notification on 20 March 1979 that defendant's final proposal, dated 6 December 1978, was approved, subject to appropriate financing. Plaintiff continued to work on the plans for the project, including reviewing construction bids. Defendant did not obtain final H.U.D. approval for the project. The agreement was that plaintiff would be paid for its services subject to H.U.D. approval of *plaintiff's plans*. Plaintiff periodically sent bills to defendant for services. Kerr assured plaintiff that plaintiff would be paid, but defendant had to wait for "H.U.D. approval." In December of 1979 or January of 1980, plaintiff was told for the first time that defendant would not pay for plaintiff's services. Plaintiff's fees were reasonable for the service rendered and totaled at least $105,000.00. The actual expenses incurred by plaintiff in work on the project was in the amount of $58,587.00.

Defendant's evidence tended to confirm plaintiff's evidence as to the initiation and progress of plans for the project, but consistently emphasized defendant's position that plaintiff was plainly told and well understood that plaintiff was engaged on a contingent fee basis and would not be entitled to payment for its work unless *the project* was approved and built.

[1] The heart of defendant's argument is that plaintiff's own evidence showed an express contract, and that where there is an express contract, no implied contract can exist. We recognize the validity of defendant's argument as to this principle of contract law. *See Snyder v. Freeman*, 300 N.C. 204, 266 S.E. 2d 593 (1980); *Supply Co. v. Clark*, 247 N.C. 762, 102 S.E. 2d 257 (1958); *Campbell v. Blount*, 24 N.C. App. 368, 210 S.E. 2d 513 (1975). Whatever the agreement may have been in the early stages of negotiation between plaintiff and defendant in this case, plaintiff's evidence clearly showed that as plaintiff's work on the project progressed, plaintiff requested payment and was assured that it would be paid for its work. Thus, even if an express contract may have at one time existed between these parties, by their conduct clearly indicating a different understanding, an implied contract could arise between them. *See Campbell, supra.*

John D. Latimer & Assoc. v. Housing Authority of Durham

[2]  Defendant argues that even if there was evidence to support an implied contract, plaintiff is not entitled to recover under *quantum meruit* because defendant received no benefit from plaintiff's services, *citing Stout v. Smith,* 4 N.C. App. 81, 165 S.E. 2d 789 (1969) *and Williams and Associates v. Products Corp.,* 19 N.C. App. 1, 198 S.E. 2d 67, 69 A.L.R. 3d 1348, *cert. denied,* 284 N.C. 125, 199 S.E. 2d 664 (1973). Neither of the cases relied upon by defendant involved resolution of a question of whether there was sufficient evidence to support an implied contract. *Stout* involved the appropriate measure of damages under *quantum meruit. Williams and Associates* involved the question of the propriety of using parol evidence to vary the terms of a written contract. In the case now before us, plaintiff's version of the agreement was that it would be compensated for preparing plans for defendant's use in applying for H.U.D. approval for the project. Plaintiff's evidence having showed that plaintiff's plans were received and used by defendant in defendant's H.U.D. application, there was a sufficient showing of benefit to defendant from plaintiff's work.

[3]  Finally, defendant argues that Kerr had no authority to bind defendant to pay plaintiff unless the project was approved and built. Kerr was defendant's chief executive officer, responsible for conducting its affairs. Plaintiff's evidence showed that plaintiff dealt extensively with Kerr, not only on the project involved in this case, but also on other similar projects. Plaintiff's reliance on Kerr's authority was reasonable. *See Zimmerman v. Hogg and Allen,* 286 N.C. 24, 209 S.E. 2d 795, 76 A.L.R. 3d 1004 (1974).

The trial court properly denied defendant's motions for directed verdict and for judgment notwithstanding the verdict.

No error.

Judges VAUGHN and WEBB concur.