NO. 13-1375

NORTH CAROLINA COURT OF APPEALS

Filed: 1 July 2014

GEOSCIENCE GROUP, INC.,

    Plaintiff,

    v.                                    Mecklenburg County
                                        No. 11 CVS 7680
WATERS CONSTRUCTION
COMPANY, INC.,

    Defendant.

Appeal by defendant from orders entered 28 December 2012 and 22 February 2013 by Judge Lindsay R. Davis, Jr., in Mecklenburg County Superior Court. Heard in the Court of Appeals 8 April 2014.

> *Keziah Gates, LLP, by Andrew S. Lasine, for plaintiff-appellee.*

> *Goodman, Carr, Laughrun, Levine & Greene, PLLC, by Miles S. Levine, for defendant-appellant.*

STEELMAN, Judge.

Where defendant failed to object to the trial court's jury instructions submitting a claim based upon *quantum meruit*, that argument is not subject to appellate review. Where defendant neither objected to the trial court's jury instructions nor requested special instructions, its challenges to the court's instructions were not preserved for appellate review. The court

did not err by denying defendant's motion for judgment notwithstanding the verdict.

## I. Factual and Procedural Background

Waters Construction Company, Inc., (defendant) is the owner of a tract of real estate located in Mecklenburg County known as Lost Tree. In 1986 defendant's owner, William Waters, obtained a zoning permit for Lost Tree that allowed construction of 49 houses. Defendant did not develop the land at that time. In 2008 defendant hired Frank Craig to prepare plans for Lost Tree, and in January 2009 Mr. Craig submitted plans to the Charlotte-Mecklenburg planning department. The plans were reviewed by Steve Gucciardi, and were rejected because they did not include the required wetlands delineations and permits. After Mr. Gucciardi reviewed the plans, he and Mr. Waters walked through the property and Mr. Gucciardi showed Mr. Waters the wetlands and streams that were subject to regulation.

After the plans submitted by Mr. Craig were rejected, Mr. Waters hired Wendell Overby to perform a preliminary wetlands review of Lost Tree. In August 2009 Mr. Overby provided Mr. Waters with a preliminary report stating that in his "professional opinion that the stream features [in Lost Tree] were jurisdictional," meaning that they were subject to regulation. Mr. Overby recommended that "a detailed wetland

delineation be performed and jurisdictional features be surveyed for permitting purposes if applicable[,]" and showed Mr. Waters the jurisdictional wetlands and streams.

In the fall of 2009 Mr. Waters met with Kevin Caldwell, plaintiff's senior vice president, about the possibility of Mr. Caldwell's revising the plans submitted by Mr. Craig. Mr. Waters wanted plaintiff to produce a set of plans for development of all 49 lots that were approved in 1986, although this would require two stream crossings. After Mr. Caldwell and Mr. Waters held several meetings to discuss "the layout of the subdivision" "in terms of these stream crossings and the impact of the buildable lots," they signed a contract for plaintiff to "design the roads, the water facility, [and] the storm drainage for [the] 49 lots depicted on [defendant's] rezoning petition." The parties agreed to a contract price of $24,000, with half to be paid when plaintiff submitted plans to the city and the remainder when the plans were approved. the contract provided that plaintiff was responsible for producing preliminary plans depicting the location of roads, sewage and storm drains in the subdivision, and for civil engineering plans for grading and control of erosion, and that defendant was responsible for surveying and delineating any "wetlands with jurisdictional streams" and providing plaintiff with this information. The

contract stated that if "additional service work" were required, "a work order (fee addendum) will be presented to [defendant] for authorization prior to proceeding with the additional work." "Additional services" were defined in the contract as work that was "[b]eyond the scope of the basic civil services to be performed for this proposal" including "wetland delineation/investigation" and "[p]lan revisions initiated by [defendant]" after plaintiff had begun work.

The contract was signed on 29 October 2009. Mr. Caldwell met with Mr. Waters several times during November 2009, but Mr. Waters did not provide Mr. Caldwell with Mr. Overby's report or with any documentation delineating the wetlands or stream crossings in Lost Tree. Plaintiff submitted plans in early December 2009, which were again rejected because they failed to delineate the wetlands or address related issues. After the plans were rejected, Mr. Waters told Mr. Caldwell about Mr. Overby's report and defendant hired Mr. Overby to prepare a detailed report delineating the jurisdictional streams and wetland areas, so that Mr. Caldwell could develop revised plans.

After Mr. Overby delineated the Lost Tree wetlands, plaintiff identified five alternative approaches for revised plans that addressed wetland issues, and provided defendant with a memo setting out these alternatives and indicating the effect

on construction costs of each choice. After meeting to discuss which approach defendant preferred, Mr. Waters directed Mr. Caldwell to prepare plans that would allow development of all 49 building lots, and to first submit the least expensive option. When these plans were rejected, Mr. Caldwell prepared another set of plans using the second least expensive option. He also prepared new plans for the development that adjusted the road elevation, storm water drainage, and sewer pipes to accommodate the revised approach to wetlands and stream crossings. These plans were ultimately approved by "both the City and Charlotte-Mecklenburg Utility Department."

After the plans were approved, Mr. Caldwell sent Mr. Waters an invoice for the additional cost of preparing revised plans. Plaintiff had been paid $12,000 at the outset of the project, and sought an additional $38,000. Plaintiff contended that the additional work was not within the scope of the parties' contract, but constituted "additional services" as defined in the contract. Mr. Waters refused to pay the additional amount, claiming that the work performed was within the scope of their agreement.

On 26 April 2011 plaintiff filed a complaint against defendant, seeking damages based upon breach of contract, implied contract, and unjust enrichment. The case was tried

before a jury at the 5 November 2012 session of Superior Court for Mecklenburg County. The trial testimony of Mr. Caldwell and Mr. Waters agreed with respect to the general sequence of events described above, but differed sharply in regards to the scope of work covered by the contract.

Mr. Caldwell testified that he had asked Mr. Waters for documentation regarding delineation of wetlands before he prepared the first set of plans, but that Mr. Waters had told him that he had "a letter" that exempted defendant from compliance with wetlands regulations, and told him to "go ahead and submit the plans," promising that he would provide plaintiff with the letter "while the plans were being reviewed." However, Mr. Waters never showed Mr. Caldwell such a letter. Mr. Waters denied telling Mr. Caldwell that he had a letter waiving wetlands requirements.

Mr. Waters conceded that (1) after Mr. Craig's plans were rejected because they failed to delineate wetlands, he had hired Mr. Overby to produce a preliminary report; (2) Mr. Overby's preliminary report concluded that there were jurisdictional streams and wetlands areas on the Lost Tree property; (3) Mr. Overby gave him this report in August 2009; (4) Mr. Waters did not show Mr. Caldwell the report until after the first set of plans plaintiff produced were rejected for failure to delineate

wetlands, and (5) Mr. Waters did not hire Mr. Overby to prepare a detailed report with the required delineation of wetlands until December 2009, after plaintiff's plans were rejected. However, Mr. Waters denied that he had withheld any information from Mr. Caldwell.

Mr. Caldwell testified that when he and Mr. Waters discussed the additional cost of revised plans, Mr. Waters told him "that money's no problem, you just get the plans approved." Mr. Caldwell considered Mr. Waters's statement to constitute "a handshake agreement" and testified that he "didn't see the need for a written agreement[.]"

> Q. . . . [D]id you ask for a written amendment to the contract or written change order for the contract?
>
> A. At that time we were going through various . . . options. I couldn't put a number on how much it would cost, but he's sitting across the table from me saying money is not a problem, you just get the plans approved, and I took the man at his word.

Mr. Waters admitted making the statement that "money is no problem," but testified that:

> A. . . . I made that comment. He asked me if money was a problem. At the time we was right in the depth of a recession and there was hardly any work going on, and I thought he meant was we going to finish the project[.] . . . I said money's not the problem. . . . I didn't even understand what he was talking about. . . .

> Q. So there was never a handshake agreement between you Mr. Caldwell that you were going to pay whatever additional expenses he incurred above the 24,000?
>
> A. I had no reason to. He was supposed to do the job for $24,000. . . . When you're contractor, that ain't the way it works. You take it for a fixed price and that's what you deliver at.

Mr. Waters testified that Mr. Caldwell "said he would finish up the plans and submit it and get it approved for $24,000, so I took the deal." He never discussed with Mr. Caldwell the procedure that would be followed if additional work was required, testifying that:

> He had a contract to do all the work for $24,000. It didn't make any difference to me what he had to do. At the time he signed the contract, I didn't know what he had to do other than get the plan finished and get it approved.

Mr. Waters admitted meeting with Mr. Caldwell in January 2010 to discuss options for addressing wetlands issues, but testified that they never discussed additional costs, and that he "didn't know anything about any additional costs" until Mr. Caldwell sent him a bill in June 2010. There was a conflict in the parties' evidence concerning the scope of their contract and whether the provision for written change orders had been abandoned.

On 8 November 2012 the jury returned verdicts finding in relevant part that:

> 1. Defendant breached its contract with plaintiff by failing to pay the full contract price.
>
> 2. Defendant owed plaintiff $12,000 for breach of contract.
>
> 3. The parties abandoned the provision of their contract requiring prior written agreement for additional services.
>
> 4. Plaintiff was entitled to recover $26,410 from defendant for additional services.

On 28 December 2012 the trial court entered judgment for plaintiff in accord with the jury's verdict. On 4 January 2013 defendant filed a motion for entry of judgment notwithstanding the verdict (JNOV), pursuant to N.C. Gen. Stat. § 1A-1, Rule 50(b). The trial court denied defendant's motion in an order entered 22 February 2013.

Defendant appeals from the judgment and the denial of its motion for JNOV.

## II. Jury Instructions

### A. Standard of Review

When a challenge to the trial court's instructions to the jury raises a legal question, it is subject to review *de novo*. *See, e.g. Jefferson Pilot Fin. Ins. Co. v. Marsh USA, Inc.*, 159 N.C. App. 43, 53, 582 S.E.2d 701, 706-07 (2003) ("The trial

court erred in giving the incorrect re-instruction to the jury as a matter of law. Questions of law are reviewable *de novo*.") (citing *In re Appeal of the Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)). However, a challenge to a matter within the court's discretion is reviewed for abuse of discretion. "The form and phraseology of issues is in the court's discretion, and there is no abuse of discretion if the issues are sufficiently comprehensive to resolve all factual controversies.." *Barbecue Inn, Inc. v. CP & L*, 88 N.C. App. 355, 361, 363 S.E.2d 362, 366 (1988) (citing *Pinner v. Southern Bell*, 60 N.C. App. 257, 263, 298 S.E. 2d 749, 753 (1983)).

### B. Preservation of Defendant's Challenges to Jury Instructions

Rule 10(a)(1) of the North Carolina Rules of Appellate Procedure states the general rule that "to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make" and must "obtain a ruling upon the party's request, objection, or motion." Rule 10(a)(2) specifically addresses challenges to jury instructions and provides that:

> A party may not make any portion of the jury charge or omission therefrom the basis of an issue presented on appeal unless the party objects thereto before the jury retires to consider its verdict, stating distinctly

> that to which objection is made and the
> grounds of the objection; provided that
> opportunity was given to the party to make
> the objection out of the hearing of the
> jury, and, on request of any party, out of
> the presence of the jury.

As a result, a party waives appellate review of jury instructions to which no objection is made at trial:

> "Rule 10[(a)](2) of our Rules of Appellate
> Procedure requiring objection to the charge
> before the jury retires is mandatory and not
> merely directory."  "[W]here a party fails
> to object to jury instructions, it is
> conclusively presumed that the instructions
> conformed to the issues submitted and were
> without legal error."

*Wilson v. Burch Farms, Inc.*, 176 N.C. App. 629, 633, 627 S.E.2d 249, 254 (2006) (quoting Wachovia Bank v. Guthrie, 67 N.C. App. 622, 626, 313 S.E.2d 603, 606 (1984) (internal quotation omitted), and *Madden v. Carolina Door Controls*, 117 N.C. App. 56, 62, 449 S.E.2d 769, 773 (1994) (internal quotation omitted).

In addition, Rule 21 of the General Rules of Practice provides in pertinent part that in every jury trial, "the trial judge shall conduct a conference on instructions with the attorneys of record[,]" that an "opportunity must be given to the attorneys . . . to request any additional instructions or to object to any of those instructions proposed by the judge[,]" and that if "special instructions are desired, they should be

submitted in writing to the trial judge at or before the jury instruction conference." Rule 21 also requires that:

> At the conclusion of the charge and before the jury begins its deliberations, and out of the hearing, or upon request, out of the presence of the jury, counsel shall be given the opportunity to object on the record to any portion of the charge, or omission therefrom, stating distinctly that to which he objects and the grounds of his objection.

If the trial court complies with Rule 21, a party who fails to object to jury instructions or to submit proposed special instructions may not raise the issue on appeal:

> Defendant failed to object to the trial court's instructions [and] . . . did not object after the trial court instructed the jury. Defendant was expressly given the opportunity to object on both occasions in accordance with the provisions of Rule 21 of the General Rules of Practice for the Superior and District Courts. . . . Defendant has not properly preserved this issue for appellate review.

*State v. Storm*, __ N.C. App. __, __, 743 S.E.2d 713, 716 (2013).

## C. Instruction on *Quantum Meruit*

Defendant argues that "the trial court erroneously submitted the issue of *quantum meruit* to the jury" on the grounds that "an express contract governed the relationship of the parties and thus precluded recovery under a *quantum meruit* claim." We hold that defendant failed to preserve this issue for appellate review.

At trial, defendant objected to the admission of evidence concerning the reasonable value of the additional services provided by plaintiff, on the grounds that recovery under a theory of *quantum meruit* was not allowed where an express contract governed the same subject matter. Following the presentation of evidence, the trial court held a conference on proposed jury instructions. The court informed the parties that it intended to instruct the jury on two issues pertaining to plaintiff's breach of contract claim. The court also informed the parties that it intended to submit three issues concerning plaintiff's *quantum meruit* claim for payment for additional services: (1) a special interrogatory asking whether the parties had abandoned the requirement in the contract that all additional work be approved in writing; (2) whether plaintiff had performed additional work; and (3) if so, the amount to which plaintiff was entitled.

Plaintiff objected to the court's submission of the "preliminary issue" of whether the parties had abandoned the contract provision requiring a written change order as a prerequisite to plaintiff's entitlement to recovery under the theory of *quantum meruit*. Plaintiff argued that under *Yates v. Body Co.*, 258 N.C. 16, 128 S.E.2d 11 (1962), it was entitled to an instruction on *quantum meruit* because there was evidence to

support recovery under that theory. Defendant proffered *Keith v. Day*, 81 N.C. App. 185, 343 S.E.2d 562 (1986), directing the court's attention to its holding that the plaintiff was not entitled to recover under *quantum meruit* in the absence of a jury finding that the parties had abandoned particular provisions of their express contract. The court denied plaintiff's request to submit the issue of *quantum meruit* without predicating recovery on a finding that the parties had abandoned the written change order requirement. The trial court then asked defendant for any requests or objections, but defendant neither requested any special instructions, nor objected to the trial court's proposed instructions:

> THE COURT: Yes. And I haven't heard from [defense counsel] the things that he wants.
>
> [DEFENSE COUNSEL]: I didn't have any changes in what you had.

After the trial court instructed the jury, but before it began its deliberations, the court again offered the parties an opportunity to state specific objections to its instructions, or to request special instructions:

> THE COURT: The jury has retired, and I will hear from counsel regarding any objections or requests for additional instructions. [Your] exceptions and objections during the charge conference are already [p]reserved.
>
> [PLAINTIFF'S COUNSEL]: Yes, sir. Those are my objections and exceptions.

> [DEFENSE COUNSEL]: My objections I think were on the whole issue of *quantum meruit* with respect to both cases.
>
> THE COURT: All right. I've considered the arguments previously given on both of those issues or questions that were raised. Your objections are noted.

Because defendant had not objected to the court's proposed instructions, the reference to an objection to "the whole issue of *quantum meruit* with respect to both cases" can only refer to his objection during trial to testimony concerning the reasonable value of plaintiff's services. Defense counsel's reference to an earlier objection to the introduction of certain testimony does not constitute an objection to a specific jury instruction and does not "stat[e] distinctly that to which objection is made and the grounds of the objection" as required by Rule 10 of the Rules of Appellate Procedure. We hold that defendant failed to preserve the challenge to the trial court's instruction on *quantum meruit* for appellate review.

Moreover, even if this issue were properly preserved, we would hold that the trial court did not err. Defendant notes the general rule that "[t]here cannot be an express and an implied contract for the same thing existing at the same time." *Campbell v. Blount*, 24 N.C. App. 368, 371, 210 S.E. 2d 513, 515 (1975) (internal citation omitted). However, it is long established

that "[a] written contract may be abandoned or relinquished [by] . . . conduct clearly indicating such purpose[.]" *Bixler v. Britton*, 192 N.C. 199, 201, 134 S.E. 488, 489 (1926) (citations omitted).

> The heart of defendant's argument is that plaintiff's own evidence showed an express contract, and that where there is an express contract, no implied contract can exist. We recognize the validity of defendant's argument as to this principle of contract law. [However,] . . . plaintiff's evidence clearly showed that as plaintiff's work on the project progressed, plaintiff . . . was assured that it would be paid for its work. Thus, [because the parties'] . . . conduct clearly indicat[ed] a different understanding, an implied contract could arise between them.

*John D. Latimer & Assoc. v. Housing Authority of Durham*, 59 N.C. App. 638, 642, 297 S.E. 2d 779, 782 (1982) (citing *Campbell v. Blount*) (other citations omitted).

Defendant does not acknowledge that even when parties have an express contract recovery based on *quantum meruit* is possible if there is evidence that the parties abandoned the contract, and does not attempt to distinguish the cases addressing this issue. Nor does defendant contest the sufficiency of the evidence on the issue of abandonment. "[T]he evidence warranted a finding . . . that the conduct of the parties clearly indicated that they were not adhering to the written provision of the contract relative to desired changes in construction.

Upon abandonment of the quoted provision by the parties, it was proper for the court to allow recovery for the changes on the basis of *quantum meruit* or an implied contract." *Campbell*, 24 N.C. App. at 371, 210 S.E. 2d at 515-16. Therefore, if we were to review this issue we would hold that the trial court did not err by instructing the jury that, if it found that the parties had abandoned the contractual requirement of written change orders, it could then consider whether plaintiff was entitled to recover based on the reasonable value of its services to defendant.

### D. Other Challenges to Jury Instructions

In addition to challenging the trial court's instruction on *quantum meruit*, defendant contends that the court made a variety of other errors in its instructions to the jury. However, none of defendant's appellate challenges to the court's instructions were the subject of an objection or of a request for a special instruction before the trial court. "A party who is dissatisfied with the form of the issues or who desires an additional issue should raise the question at once, by objecting or by presenting the additional issue. If a party consents to the issues submitted, or does not object at the time or ask for a different or an additional issue, he cannot make the objection later on appeal. Because defendant neither objected to the issue

submitted to the jury nor asked for a different issue, as the record unequivocally reveals, it cannot do so on this appeal." *Hendrix v. Casualty Co.*, 44 N.C. App. 464, 467, 261 S.E.2d 270, 272-73 (1980) (citing *Baker v. Construction Corp.*, 255 N.C. 302, 121 S.E. 2d 731 (1961) (other citation omitted). Defendant's arguments concerning other alleged errors in the court's instructions to the jury are dismissed.

## III. Judgment Notwithstanding the Verdict

Finally, defendant argues that the trial court "erred in denying defendant's motion for judgment notwithstanding the verdict, when the evidence presented to the court was insufficient to support the jury's verdict." However, defendant fails to identify any issue or element for which the evidence was insufficient, or to cite any authority addressing the sufficiency of evidence of breach of contract or of recovery under *quantum meruit*. Instead, defendant makes a conclusory argument that the "court's failure to properly and clearly instruct the jury on the material issues based on the pleadings, considering all evidence presented, substantially prejudiced the defendant and therefore the court's denial of defendant's judgment notwithstanding the verdict was improper."

Moreover, defendant's motion for JNOV did not allege that plaintiff's evidence was insufficient, but was based solely on defendant's contention that the existence of an express contract precluded recovery based on *quantum meruit*. "Such a shift runs contrary to our long standing admonition that parties may not present, nor prevail upon, arguments in the appellate courts that were not argued in the trial court. . . . '[T]he law does not permit parties to swap horses between courts in order to get a better mount' before an appellate court).'" *Hamby v. Profile Prods., L.L.C.*, 361 N.C. 630, 642-43, 652 S.E.2d 231, 239 (2007) (quoting *Weil v. Herring*, 207 N.C. 6, 10, 175 S.E. 836, 838 (1934)). This argument lacks merit.

For the reasons discussed above, we conclude that the trial court did not err and that its judgment and order should be

AFFIRMED.

Judges HUNTER, Robert C., and BRYANT concur.