IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA18-184

Filed: 16 October 2018

Wake County, No. 15 CVS 11979

BRENNAN STATION 1671, LP, Plaintiff,

v.

MICHAEL BOROVSKY, GOLDSMITH LLC d/b/a MB GOLDSMITHS and MICHAEL BOROVSKY, Defendants / Third-Party Plaintiffs,

v.

KIMCO REALTY CORPORATION, CHINA COURT CHINESE RESTAURANT, INC., and CHINA COURT, INC., Third-Party Defendants.

Appeal by plaintiffs from judgment and orders entered 13 October 2017 and 17 October 2017, respectively, by Judge Anderson D. Cromer in Wake County Superior Court. Heard in the Court of Appeals 20 September 2018.

> *The Law Office of John T. Benjamin, Jr., P.A., by John T. Benjamin, Jr. and Aleksandra E. Anderson, for plaintiff-appellant/cross-appellee.*

> *Mark Hayes and Nicholls & Crampton, P.A., by Adam M. Gottsegen, for defendant-appellee/cross-appellant.*

TYSON, Judge.

Brennan Station 1671, LP ("Plaintiff") appeals from an order entered upon a jury's verdict denying Plaintiff's claims against Michael Borovsky, Goldsmith, LLC d/b/a MB Goldsmiths, and Michael Borovsky (collectively "Defendants"), finding in

favor of Defendants' claims, and awarding Defendants $60,000.00 on their counterclaim. Plaintiff also appeals the trial court's order denying its motion for judgment notwithstanding the verdict finding Defendants not liable. Defendants cross-appeal the trial court's granting of Plaintiff's motion for judgment notwithstanding the verdict setting aside the jury's verdict on their counterclaim and the trial court's limits on the scope of lost profits recoverable by Defendants.

## I. Background

Defendants agreed to lease 1,238 square feet of premises located in Brennan Station Shopping Center in Raleigh, North Carolina, to operate a jewelry store ("premises"). In March 2011, Defendants entered into a lease agreement with GRE Brennan Station LLC for an initial term of three years and four months. Defendants were required to pay monthly installments of minimum annual rent and additional rent due and payable on the first day of each month. Defendant Michael Borovsky signed a personal guaranty agreement for the lease. In November 2011, GRE Brennan Station LLC sold the shopping center to Plaintiff, who became the successor-landlord under the lease agreement.

On 25 February 2014, Defendants sent an email to Plaintiff's property management company, Kimco Realty Corporation ("Kimco"), complaining they were "still getting a bad odor" inside the store. Kimco sent an employee to the store, but the smell had dissipated prior to his arrival.

On 23 April 2014, Defendants exercised their option to renew the term under the lease agreement and executed a first amendment to the lease. This amendment extended the lease term for three years, from 1 September 2014 through 31 August 2017, and then extended the term for an additional seven years, from 1 September 2017 through 31 August 2024. On that same date, Defendants wrote a letter to Plaintiff's property manager, complaining about the "toxic sewage smell" that had been plaguing the store "for the past several months to about a year[.]" In their brief, Plaintiff asserts it has no record of this letter.

Beginning in September 2014, Defendants began keeping a record of the presence of the foul smells inside the jewelry store and of the actions being taken. Defendants also kept a log of customers who acknowledged a "strong odor of sewage like smell."

In November 2014, Kimco contracted with a plumber to inspect the premises and investigate the smell. The plumber identified multiple possible causes of the sewage smell including degraded wax seals in the toilets in Defendants' premises and the adjacent Chinese food restaurant ("China Court"), and a possible clogged or deficient grease trap located outside behind the two properties. The plumber recommended a smoke test be performed to locate potential sewer gas leaks and the source or cause of the odor.

Defendants sent a letter dated 16 December 2014 to Plaintiff, detailing the issues with the sewage odor, the property management's attempts to remedy the issue, and the loss of business because of the foul smell inside the store. Defendants referenced Article 22 of their lease, Quiet Enjoyment, and requested "someone from [Plaintiff's] legal department" to contact them "to discuss a resolution of this ongoing problem, including a rent reduction" to remedy for the loss of sales and profits. Plaintiff asserts there was no record of receipt of this letter either, and questions how the envelope was purported to include a copy of the lease agreement when the weight on the receipt indicated it was one ounce.

Defendants retained counsel, who sent another letter dated 14 January 2015. This letter complained of mold in the jewelry store and included a mold report. The letter also mentioned the issue of the sewage smell and its negative impact upon the jewelry business. Defendants' counsel asserted these issues violated Plaintiff's obligations under Article 22 of the lease agreement to provide Defendants with the right of quiet enjoyment. Defendants' counsel proposed rent abatement or an early termination of the lease as remedies for the violations.

By 26 January 2015, the toilets inside Defendants' premises and China Court were fixed and the grease trap was cleaned. A smoke test was conducted at the jewelry store and China Court and revealed no evidence of sewer gas leaks. Kimco indicated they had "no other ideas to remedy" the sewage smell.

On 12 February 2015, general counsel for Kimco sent a letter in response to Defendants' counsel's 14 January 2015 letter. The letter denied Plaintiff was in breach of the lease because Defendants had been continuously operating the business inside the premises. Further, Kimco asserted the operative article of the lease on the landlord's obligations would be Article 13, which details Plaintiff's duties to repair and maintain the property. The letter advised Defendants of their obligations and need to specify what repair obligation Plaintiff had failed to remedy, and their requirement to provide written notice of such obligation before Plaintiff would be considered in breach of the lease.

Further, the letter stated Plaintiff had inspected the areas it was responsible to maintain under the lease, the exterior walls and structural columns, and found no issues to address. Defendants were directed to look into the areas they were responsible for as tenant to maintain under the lease for potential sources of the odor and mold.

Defendants' counsel responded in writing on 23 February 2015, and asserted Defendants' inability to peacefully enjoy the premises due to the daily issue of mold and the "horrible odor." The letter listed the numerous occasions Defendants had complained in writing, both via email and first-class mail, but also indicated: "please accept this [letter] as our client's written notice of the maintenance obligation of the landlord to remediate the mold in the premises." The letter reasoned the mold was

due to "high moisture levels, which would have been caused by water intrusion in the exterior walls, as is the typical cause for the presence of mold."

On 11 March 2015, a roofing company was sent to inspect and repair the roof over the jewelry store. The roofer identified three holes in the membrane of the roof and found water had been entering the building. The holes in the roof were repaired and the area was cleaned. On 3 April 2015, Defendants' counsel sent a letter to China Court, to provide written notice of the issues with the mold and the odor and to assert the responsibility of China Court and Plaintiff for the damage.

On 1 June 2015, Defendants' counsel sent a certified letter to Plaintiff indicating the enclosed rent check for June would be Defendants' final rent payment. Defendants indicated they would vacate by the end of the month. Kimco's general counsel replied in an email noting the failure of Defendants to "provide anything to [Kimco or Plaintiffs] indicating it [was their] responsibility" to repair any damage, and that by leaving the premises Defendants would be in breach of the lease.

Defendants made no additional rent payments after 1 June 2015. Plaintiff sent a notice of default on 11 August 2015. This notice indicated Defendants' defaulted by nonpayment of rent and failure of the tenant to continuously operate in the premises throughout the lease period.

Plaintiff filed its complaint on 2 September 2015, and asserted claims for breach of lease and breach of guaranty agreement. Defendants filed an answer and

counterclaims against Plaintiff for breach of contract, constructive eviction, unfair or deceptive trade practices, negligence, and breach of covenant of good faith and fair dealing. Defendants also asserted third-party claims against both Kimco and China Court.

Plaintiff filed a motion to dismiss. Defendants' counterclaims for unfair or deceptive trade practices and negligence were dismissed. Kimco's motion to dismiss Defendants' claims against it was granted. Defendants voluntarily dismissed their claims against China Court.

The case went to trial on 18 September 2017. Each party timely moved for directed verdict at the close of the opposing side's evidence, and both motions were denied. The jury returned a verdict in favor of Defendants on both Plaintiff's claims and Defendants' counterclaims and awarded Defendants $60,000.00 in damages.

Plaintiff filed a motion for judgment notwithstanding the verdict ("JNOV"). The trial court granted Plaintiff's JNOV motion setting aside Defendants' counterclaims against Plaintiff and the jury award of damages, and denied the motion regarding Plaintiff's claims against Defendants. Both Plaintiff and Defendants timely appealed.

## II. Jurisdiction

An appeal of right lies with this Court pursuant to N.C. Gen. Stat. § 7A-27(b)(1) (2017).

### III. Plaintiff's Appeal

Plaintiff argues the trial court erred (1) in denying the portion of Plaintiff's JNOV concerning its claims for breach of lease and breach of guaranty against Defendant, and (2) in instructing the jury on the elements of constructive eviction.

### A. Judgment Notwithstanding the Verdict

#### 1. Standard of Review

The standard of appellate review for a JNOV is *de novo. Austin v. Bald II, L.L.C.*, 189 N.C. App. 338, 342, 658 S.E.2d 1, 4 (2008). The proper inquiry upon review of a JNOV is "whether the evidence was sufficient to go to the jury." *Tomika Invs., Inc. v. Macedonia True Vine Pentecostal Holiness Church of God, Inc.*, 136 N.C. App. 493, 499, 524 S.E.2d 591, 595 (2000) (citation omitted). "The hurdle is high for the moving party as the motion should be denied if there is more than a scintilla of evidence to support the [nonmovant's] *prima facie* case." *Id.* (citation omitted). A "[j]udgment notwithstanding the verdict should be granted only when the evidence is insufficient as a matter of law to support the verdict." *Beal v. K. H. Stephenson Supply Co.*, 36 N.C. App. 505, 507, 244 S.E.2d 463, 465 (1978).

#### 2. Breach of Contract

Plaintiff argues all elements of its breach of contract claims against Defendants were established by stipulations and evidence presented at trial, and once

Defendants' claims were disposed of, the trial court should have granted Plaintiff's motion for JNOV.

"The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000) (citation omitted). Breach of a contract with unambiguous terms is a question of law for the trial courts, which may be decided on a directed verdict. *Pleasant Valley Promenade v. Lechmere, Inc.*, 120 N.C. App. 650, 661, 464 S.E.2d 47, 56 (1995).

Before trial, the parties stipulated to the existence of a valid contract:

> (a) [Defendants] entered into a Shopping Center Lease with GRE Brennan Station LLC on March 19, 2011 for the lease of a commercial space located in Suite 123 of Brennan Station Shopping Center;
> (b) [Defendant] Michael Borovsky signed an Absolute Unconditional Guaranty Agreement to GRE Brennan Station LLC guarantying payment for all amounts owed under the Shopping Center Lease by [Defendant] MB Goldsmiths;
> (c) [Defendants] executed a First Amendment to Lease . . . on April 23, 2014 extending the . . . Lease through August 31, 2024. . . .

As listed in Article 18 of the lease agreement, Defendants would be in breach of the lease if:

> (a) any part of the Rent required to be paid by Tenant under this Lease shall at any time be unpaid beyond any applicable grace period;
>
> . . .

(c) Tenant fails, after the date on which it is required by this Lease to open the Premises for business with the public, to be open for business as required by this Lease, or Tenant vacates or abandons the Premises[.]

As part of their pretrial stipulations, the parties also stipulated to conduct that would be a breach under the lease:

(h) Defendants vacated . . . in June 2015;
(i) The last payment of rent made by Defendant to Plaintiff was on June 1, 2015[.]

While elements of Plaintiff's breach of contract claim were present in the pretrial stipulations, the trial court did not err in denying Plaintiff's motions for directed verdict or JNOV. Motions for JNOV are held to high standards, and there was at least a scintilla of evidence to support Defendants' claim for constructive eviction. *See Tomika Invs.,* 136 N.C. App. at 499, 524 S.E.2d at 595.

## B. Jury Instructions

Plaintiff argues the jury instructions concerning constructive eviction confused the jury and misstated the law on the elements of the constructive eviction claim.

### 1. Standard of Review

Challenges to the form and phrasing of jury instructions are reviewed for an abuse of discretion, but challenges that raise questions of law are reviewed *de novo*. *Geoscience Grp., Inc. v. Waters Constr. Co.*, 234 N.C. App. 680, 686, 759 S.E.2d 696, 700 (2014).

"[T]his Court considers a jury charge contextually and in its entirety." *Hammel v. USF Dugan, Inc.*, 178 N.C. App. 344, 347, 631 S.E.2d 174, 177 (2006) (citation omitted). "[I]t is not enough for the appealing party to show that error occurred in the jury instructions; rather, it must be demonstrated that such error was likely, in light of the entire charge, to mislead the jury." *Robinson v. Seaboard Sys. R.R., Inc.*, 87 N.C. App. 512, 524, 361 S.E.2d 909, 917 (1987) (citation omitted).

*2. Constructive Eviction Instruction*

No pattern jury instructions exist for constructive eviction. Plaintiff submitted the proposed instruction on that issue:

> Did the Plaintiff Landlord breach the Lease Agreement by failing to remediate the water leak amounting to a breach of the express covenant of quiet enjoyment resulting in a constructive eviction of the tenant Defendant MB Goldsmith[s] from the premises in accordance with applicable law and the Lease Agreement, as Amended?
>
> On this issue, the burden of proof is on the [Defendants].
>
> Constructive eviction occurs when a breach of a contractual duty by a landlord deprives its tenant of that beneficial enjoyment of the premises to which he is entitled under his lease, causing his tenant to abandon the leased premises. In other words, constructive eviction takes place when a landlord's breach of duty under the lease renders the premises untenable. (Citations and internal quotation marks omitted).
>
> This means that the Defendants must prove, by the greater weight of the evidence, four things:

- 11 -

First, that the Plaintiff had a duty under the terms of the Lease Agreement to repair or remedy any mold or foul odor caused by a water leak from the neighboring tenant space formerly occupied by China Court restaurant.

Second, that the Plaintiff breached a duty under the Lease Agreement by failing to repair or remedy any mold or foul odor caused by a water leak from the neighboring tenant space formerly occupied by China Court restaurant.

Third[,] that the Plaintiff's failure to repair or remedy any mold or foul odor, deprived the Defendants of the beneficial use and enjoyment of the Premises Leased by [Defendants] which were unsuitable for the purposes for which they were leased.

Fourth, that the Defendant Tenant vacated possession of the Leased Premises within a reasonable time after the occurrence of the water or moisture intrusion into the Leased Premises.

Instead of using Plaintiff's proposed elements, the trial court instructed the jury on the following elements:

First, that Plaintiff, Brennan Station, had a duty under the terms of the Lease Agreement not to hinder or interrupt the [Defendants'] peaceable and quiet enjoyment of the Premises;

Second, that Plaintiff breached that duty under the Lease Agreement;

Third[,] that Plaintiff's breach of that duty deprived Defendants of the beneficial use and enjoyment of the Premises Leased by [Defendants] and that they were rendered untenable for the purposes for which they were leased; and

Fourth, that Defendant Tenant vacated possession of the leased premises within a reasonable time after the

occurrence of the hindrance or interruption of the Landlord.

Plaintiff timely objected to the trial court's version of the elements of quiet enjoyment, which was overruled. Plaintiff asserts the trial court's changes to the first two elements misconstrue North Carolina law on constructive eviction by removing the "two-step" requirement that the jury first find a breach of a specific lease agreement provision before finding the landlord's breach forced a tenant to vacate.

The language provided in the trial court's instructions follows the express covenant of quiet enjoyment contained in the lease agreement: "Tenant shall peaceably and quietly hold and enjoy the Premises for the Term without hindrance or interruption by Landlord[.]" Further, the instructions given indicate the jury needed to find Plaintiff had a duty under the lease and breached that duty, the same finding as asserted in Plaintiff's requested instructions.

The trial court's omission of Plaintiff's preferred phrasing is not a misstatement of law, but is a matter to be reviewed for abuse of discretion. *See Geoscience Grp.,* 234 N.C. App. at 686, 759 S.E.2d at 700. Plaintiff has failed to show the trial court abused its discretion in giving the jury instructions, which track the language and provisions of the lease agreement, and reflect the relevant law of constructive eviction. *See Marina Food Assocs., Inc. v. Marina Restaurant, Inc.*, 100 N.C. App. 82, 92, 394 S.E.2d 824, 830 (1990) ("when a landlord breaches a duty under

the lease which renders the premises untenable, such conduct constitutes constructive eviction"). Plaintiff's argument is overruled.

## IV. Defendants' Cross-Appeal

Defendants argue the trial court erred in: (1) granting Plaintiff's JNOV motion concerning Defendants' claims of constructive eviction setting aside the jury's verdict; and, (2) ruling at the charge conference that the trial court would instruct the jury it could only award damages for lost profits through 2015.

## A. Judgment Notwithstanding the Verdict

### 1. Standard of Review

Plaintiff moved for JNOV. As previously stated the standard of review requires: "if there is more than a scintilla of evidence to support [Defendants] *prima facie* case," the motion should be denied. *Tomika Invs.*, 136 N.C. App. at 499, 524 S.E.2d at 595. "[T]he trial court must view all the evidence that supports the non-movant's claim as being true and that evidence must be considered in the light most favorable to the non-movant, giving to the non-movant the benefit of every reasonable inference that may legitimately be drawn from the evidence with contradictions, conflicts, and inconsistencies being resolved in the non-movant's favor." *Bryant v. Nationwide Mut. Fire Ins. Co.*, 313 N.C. 362, 369, 329 S.E.2d 333, 337-38 (1985) (citation omitted).

### 2. Constructive Eviction

Many of the issues before us hinge upon the applicability of the law of constructive eviction, and whether Plaintiff, Defendants, or a third party had a duty to remedy the foul odor and mold inside the premises Defendants leased.

> An act of a landlord which deprives his tenant of that beneficial enjoyment of the premises to which he is entitled under his lease, causing the tenant to abandon them, amounts to a constructive eviction. Put another way, when a landlord breaches a duty under the lease which renders the premises untenable, such conduct constitutes constructive eviction. Furthermore, a lease includes the implied covenant of quiet enjoyment. Where a lessee has been constructively evicted, the covenant of quiet enjoyment has also been breached.

*Marina Food Assocs.,* 100 N.C. App. at 92, 394 S.E.2d at 830 (citations omitted).

Plaintiff asserts it had no obligation under the lease to remedy the foul odor inside Defendants' premises. Article 13.1 of the lease agreement states:

> LANDLORD'S DUTY TO MAINTAIN. Landlord will keep the exterior walls, structural columns and structural floor or floors (excluding outer floor and floor coverings, walls installed at the request of Tenant, doors, windows, and glass) in good repair. Notwithstanding the foregoing provisions of this Section, Landlord shall not in any way be liable to Tenant on account of its failure to make repairs unless Tenant shall have given Landlord written notice and afforded Landlord a reasonable opportunity to effect the same after such notice.

Article 13.2 lists Defendants' maintenance duties as tenant, and indicates Defendant was responsible to repair "interior walls . . . the interior portions of exterior walls . . . pipes and conduits within the Premises . . . pipes and conduits outside the Premises between the Premises and the service meter[.]"

Plaintiff asserts the cause of the mold and the foul smell was a water leak from China Court between two interior walls of the building, and was beyond its obligation under the lease. However, under the strict requirements of a JNOV, if a scintilla of evidence supports Defendants' prima facie case, the JNOV is properly denied. At trial, Defendants presented other evidence and theories of potential sources and causes of the foul odors and mold damage, including an exterior wall, demising wall between two tenants, a faulty grease trap, and a leaking roof.

Defendants presented and admitted testimony by James Spangler, an environmental assessment expert, to detail how China Court's exterior grease trap could have caused the odor inside Defendants' store. The grease trap was located outside of the premises near the back parking lot. The grease trap uses pipes to transfer the wastewater out of the restaurant and filter out the grease. Sewage had been found in the grease trap on previous occasions. Spangler testified China Court's grease trap had settled, possibly leading to odors being able to travel back up the pipes and into the premises. Spangler also identified significant holes in the demising wall between the jewelry store and China Court, possibly allowing the smell to enter into Defendants' business.

Whether or not this shared wall between the premises and China Court was a structural or demising wall, or an interior wall, and fell under Defendants' or Plaintiff's responsibility under the lease, was a question for the jury. Further, under

the terms of the lease, Defendants were not responsible for maintaining the exterior grease trap or for the integrity of the roof.

Plaintiff, through its management company, pumped the grease trap after Defendants began complaining of the odor in the jewelry store. After the grease trap was pumped, Defendants still complained of odor. Plaintiff sent a roofing company to look for possible damage in the roof, and the company repaired three holes in the roof. Viewed in the light most favorable to Defendants, this evidence was sufficient to support a jury's verdict in favor of Defendants. *See McNamara v. Wilmington Mall Realty Corp.,* 121 N.C. App. 400, 406, 466 S.E.2d 324, 328 (1996).

The plaintiff in *McNamara* leased a space in a mall to operate a jewelry store. *Id.* at 403, 466 S.E.2d at 326-27. The plaintiff was informed an aerobics studio would be moving in next door, and it would be required to install soundproofing to prevent excessive noise in the plaintiff's space. *Id.* After multiple complaints of noise by the plaintiff, the defendant-landlord installed more insulation, claimed it had remediated the problem and considered the matter "closed." The landlord also demanded the rent payments, which had been deposited in an escrow account pending resolution of the issue, be released. *Id.* The plaintiff did not pay the rent and abandoned the premises. *Id.*

The plaintiff then initiated an action "for breach of contract based upon the theories of constructive eviction and breach of the covenant of quiet enjoyment." *Id.*

Though the plaintiff had asserted two theories of recovery, the question submitted to the jury was, "Did the [d]efendant . . . breach the lease agreement with the [p]laintiff?" *Id.* at 405, 466 S.E.2d at 328. A jury found in favor of the plaintiff, and the trial court denied the defendant-landlord's motion for JNOV. *Id.* at 404, 466 S.E.2d at 327.

This Court held the trial court did not err in denying the defendant's JNOV for either of the plaintiff's claims. This Court stated that the facts and evidence, "viewed in the light most favorable to plaintiff [the non-moving party], constituted sufficient evidence to support a jury finding that plaintiff abandoned the premises within a reasonable time and that the abandonment was the result of defendant's failure to remedy the noise from the studio." *Id.* at 406, 466 S.E.2d at 328.

The defendant argued the terms of the express covenant of quiet enjoyment overrode any implied rights. This Court disagreed and found that if the defendant "took no action regarding plaintiffs complaints" received after the defendant had installed the additional insulation, "then for purposes of plaintiff's claims, defendant's failure to abate the noise constituted a constructive eviction as of that time." *Id.* at 407, 466 S.E.2d 329.

Plaintiff argues the constructive eviction counterclaim fails unless Defendants can point to an express obligation under the lease it breached. Plaintiff cites to *Charlotte Eastland Mall, LLC v. Sole Survivor, Inc.* to support its assertion. The defendants in that case entered into a lease with the plaintiff to open a shoe repair

business in the mall. 166 N.C. App. 659, 660, 608 S.E.2d 70, 71 (2004). Two years prior to the end of the lease term, the defendants abandoned the premises and ceased rent payments. *Id.* The plaintiff filed suit and the defendants asserted an affirmative defense. *Id.* at 661, 608 S.E.2d at 71. The trial court granted the plaintiff's motion for summary judgment. *Id.*

On appeal, the defendants argued the trial court erred because "there was a material issue of fact regarding whether [p]laintiff's failure to provide adequate security negated [d]efendants' obligation to pay rent[.]" *Id.* at 661, 608 S.E.2d at 72. The defendants asserted the plaintiff's "failure to provide security was a breach of its duty to provide a 'safe environment', an explicit breach of plaintiff's duties under the lease, and a breach of the implied covenant of 'quiet enjoyment.'" *Id.* at 662, 608 S.E.2d at 72.

This Court rejected the defendants' arguments, as the lease specifically stated the plaintiff could elect to provide security for the mall, *at its discretion*. *Id.* at 663, 608 S.E.2d at 73. This Court also rejected the defendants' argument that the lack of provided security led to their constructive eviction, stating "defendants have failed to show that plaintiff breached any duty under the lease." *Id.* at 664, 608 S.E.2d at 73.

This case is distinguishable from *Charlotte Eastland Mall*. As previously stated, sufficient evidence was presented to support a jury's finding Plaintiff had breached the lease in not remedying the sources of the foul odor and mold problem.

Plaintiff's lease does not include a conditional obligation or option to repair structural damage or to maintain the roof and exterior, as was the case for the landlord's *discretion* to provide security as in *Charlotte Eastland Mall*.

Finally, Plaintiff asserts Defendants did not provide adequate notice of default under the lease. Article 19.1 of the lease agreement states, in relevant part:

> LANDLORD'S DEFAULT. Except as otherwise provided in this Lease, Landlord shall be in default under this Lease if Landlord fails to perform any of its obligations hereunder and said failure continues for a period of thirty (30) days after written notice thereof from Tenant to Landlord (unless such failure cannot reasonably be cured within thirty (30) days and Landlord shall have commenced to cure said failure within said thirty (30) days and continues diligently to pursue the curing of the same).

Plaintiff argues Defendants' notice only informs Plaintiff of the existence of mold, but failed to point to any specific breach by Plaintiff. Further, Plaintiff argues mold and odor are not Plaintiff's responsibilities under Article 13, and Plaintiff argues Defendants were aware any of the purported causes of the mold and odor were their responsibility.

Upon review of the extensive record in this case, Defendants provided adequate and repeated notices to Plaintiff of the ongoing foul odor and mold problems. Several letters were sent, and though Plaintiff purports to not have received the early letters, Plaintiff was certainly aware of the issue and their property manager responded, sent personnel, and began investigating the source of the foul smell as early as February 2014.

In February 2015, Plaintiff asserted in a letter it had inspected all areas it was responsible to maintain under the lease, but the roof was not repaired until March 2015, and the holes in the shared demising wall for the premises and China Court were first mentioned by James Spangler, when he inspected the premises in late June and late August 2016. Plaintiff had ample and specific notice of the ongoing problems in Defendants' premises. Plaintiff's arguments are overruled.

Defendants presented sufficient, and certainly a scintilla of, evidence to defeat the high standard to grant Plaintiff's JNOV motion. The trial court erred in granting the JNOV to overturn the jury's verdict and award on Defendants claims for constructive eviction. We reverse and reinstate the jury's verdict and damages and the judgment entered thereon. The trial court's order left open the issue of attorney's fees and costs for Defendants. We remand for a determination of the costs and fees, if any, Defendants are entitled to recover.

### B. Jury Instruction on Damages

Defendants assert the trial court erred in instructing the jury it could only award damages for lost profits through 30 June 2015. Defendants argue the lost profits between 30 June 2015 and the date of trial were not "purely speculative" but were based upon Borovsky's testimony as the owner of the business and substantial financial documents, which had been admitted into evidence.

"Damages for breach of contract may include loss of prospective profits where the loss is the natural and proximate result of the breach." *Mosley & Mosley Builders v. Landin Ltd.*, 87 N.C. App. 438, 446, 361 S.E.2d 608, 613 (1987) (citation omitted). "To recover lost profits, the claimant must prove such losses with reasonable certainty." *McNamara*, 121 N.C. App. at 407, 466 S.E.2d at 329 (citation and internal quotation marks omitted). Whether an amount has been proven with reasonable certainty is a question of law, to be reviewed *de novo. Plasma Ctr. of Am., LLC v. Talecris Plasma Resources, Inc.*, 222 N.C. App. 83, 91, 731 S.E.2d 837, 843 (2012).

Plaintiff argues Defendants' lost profits after vacating the location in Raleigh were speculative. Plaintiff asserts Defendants' profits were affected by the relocation of the jewelry business to a smaller market in Graham, North Carolina, and Defendants made little effort to find a new location within Raleigh. However, Defendants presented sufficient evidence of lost profits stemming from Plaintiff's breach of the lease. Defendants had an established history of profits, and used historical tax records to establish profits before and after Plaintiff's breach. *Compare McNamara*, 121 N.C. App. at 409, 466 S.E.2d at 330.

The trial court did not give a limiting instruction preventing the jury from considering lost profits after Defendants vacated the premises, but after the ruling on the scope of the lost profits both parties' limited their closing arguments to damages through 30 June 2015. Because Defendants could prove their lost profits

with reasonable certainty, the issue should have been before the jury. We remand for a new trial on the issue of potential lost profits damages. *See id.* at 412, 466 S.E.2d at 332.

## V. Conclusion

A motion for JNOV should be "cautiously and sparingly granted." *Bryant*, 313 N.C. at 369, 329 S.E.2d at 338. As more than a scintilla of evidence supports Defendants' claim of constructive eviction, Plaintiff's JNOV should have been denied. The trial court properly denied the motion concerning Plaintiff's claims against Defendants. That portion of the order appealed from is affirmed.

We reverse the partial grant of Plaintiff's JNOV motion and reinstate the jury's verdict and the judgment entered thereon. We remand this issue to the trial court for a new trial on potential lost profits damages after 30 June 2015. We also remand to the trial court for a determination on the costs and fees, if any, Defendants are entitled to as the prevailing party. *It is so ordered.*

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Judges INMAN and BERGER concur.