RHONDA WALKER TALLENT v. JERRY LEE BLAKE

No. 8127SC868

(Filed 18 May 1982)

**Libel and Slander § 16— insufficient evidence to support claim for slander actionable per quod—failure to show special damages**

In an action instituted to recover actual and punitive damages resulting from "slanderous and defamatory statements" made by defendant, the trial court erred in failing to grant defendant's motions for directed verdict and judgment notwithstanding the verdict where plaintiff claims she was fired from her employment with defendant and defendant claims plaintiff had resigned and told a reporter "[a]ny claim Mrs. Tallent was fired is false," where such a statement did not constitute slander actionable *per se*, and where plaintiff failed to show special damages sufficient to support a claim for slander actionable *per quod.*

APPEAL by defendant from *Cornelius, Judge.* Judgment entered 24 March 1981 in Superior Court, CLEVELAND County. Heard in the Court of Appeals 2 April 1982.

*O. Max Gardner III for plaintiff-appellee.*

*Whisnant, Lackey & Schweppe, by N. Dixon Lackey, Jr., for defendant-appellant.*

HILL, Judge.

Plaintiff instituted this action to recover actual and punitive damages resulting from "slanderous and defamatory statements" made by defendant. Defendant's answer asserted truth as a defense.

Plaintiff's evidence tended to show that she worked for the School Food Service of the Cleveland County Board of Education. She did secretarial work and bookkeeping. She prepared checks for the School Food Service employees by using the computer in the central office of the Board of Education; however, she did so under the direction of Peggy Fuller. Peggy Fuller was the computer operator for the Board of Education, and she prepared the payroll checks for all employees other than those in the School Food Service. Plaintiff was not trained to operate the computer, she could not operate it on her own, and she was afraid of it. Peggy Fuller resigned her position effective 30 April 1980. On 1

May 1980, plaintiff was asked to use the computer to prepare the payroll for all ten-month employees of the Board. She responded that she did not know how to do this. Later that day, plaintiff was summoned to the office of defendant, Jerry Lee Blake, who was the superintendent of the county school system. Plaintiff told defendant that she did not know how to do the payroll. Defendant told plaintiff that she would do the job requested as best she could or else. Plaintiff testified that she asked defendant whether "or else" meant that she would be fired, that defendant said that it did, and that she left defendant's office with the understanding that she had been fired. Defendant, who was called to testify for plaintiff, testified that he told plaintiff that "or else" meant that she would be choosing not to work for the Board, that plaintiff then said that she quit, and that he regarded plaintiff as having resigned from her job. Michael Goforth, a reporter for the *Shelby Daily Star*, telephoned defendant on 2 May 1980 to ask some questions. Defendant told the reporter that two people had resigned and that "[a]ny claim Mrs. Tallent was fired is false." This statement was quoted in a newspaper article.

Defendant moved for a directed verdict at the close of plaintiff's evidence. Among other grounds, he argued that his statement to the reporter was in no way slanderous or defamatory and that plaintiff had failed either to allege or prove special damages. The trial judge allowed a directed verdict as to plaintiff's claim for punitive damages, but he otherwise denied the motion. Defendant presented no evidence and renewed his motion which again was denied.

The judge submitted two issues as to liability, which were stated and answered as follows:

    1. Did the defendant, Jerry Lee Blake, slander the plaintiff, Rhonda Walker Tallent?

    [Yes.]

    2. Were the statements concerning the plaintiff, Rhonda Walker Tallent, true?

    [No.]

The jury set actual damages at $1,500.00. Defendant moved for judgment notwithstanding the verdict based upon the same

arguments previously presented. The judge denied the motion and entered judgment on the verdict.

On appeal, defendant presents and argues six assignments of error, but the six assignments are based upon only three exceptions. These exceptions are to the denial of a directed verdict at the close of plaintiff's evidence, the denial of a directed verdict at the close of all evidence, and the denial of judgment notwithstanding the verdict. The standards applicable to a motion for a directed verdict and to a motion for judgment notwithstanding the verdict are the same. *Dickinson v. Pake*, 284 N.C. 576, 201 S.E. 2d 897 (1974); *Nytco Leasing, Inc. v. Southeastern Motels, Inc.*, 40 N.C. App. 120, 252 S.E. 2d 826 (1979). All the evidence which supports plaintiff's claim must be taken as true and must be considered in the light most favorable to plaintiff, giving her the benefit of every reasonable inference which legitimately may be drawn therefrom, with contradictions, conflicts and inconsistencies being resolved in plaintiff's favor. The issue is whether the evidence, when considered in that manner, is sufficient for submission to the jury. *Id.* Defendant's six assignments of error therefore present but a single issue. However, we must examine the record carefully in order to refine that issue.

Plaintiff asserts in her brief, "[T]his is not a case of slander. It is, rather, a case of libel *per se.*" We cannot agree. The term defamation includes two distinct torts, libel and slander. In general, libel is written while slander is oral. Prosser, Law of Torts (4th ed. 1971), § 111, p. 737. Libel, being criminal in origin, always was regarded as the greater wrong, and greater responsibility was attached to it. "It was accordingly held that some kinds of defamatory words might be actionable without proof of any actual damage to the plaintiff if they were written, where such damage must be proved if they were spoken. [Footnote omitted.] This remains the chief importance of the distinction." *Id.* § 112, p. 752. *Accord, Kindley v. Privette*, 241 N.C. 140, 84 S.E. 2d 660 (1954). The distinction between libel and slander is sometimes a difficult one to make. For example, an interview given to a newspaper reporter may support an action for libel as well as slander. The speaking of defamatory words to a newspaper reporter will support an action for slander. However, the speaking of such words to a reporter also will support an action for libel if the speaker intends that his words be embodied

forthwith in a physical form and the words are subsequently so embodied. *Bell v. Simmons*, 247 N.C. 488, 101 S.E. 2d 383 (1958).

The present case concerns a statement made by defendant to a reporter that was then quoted in a newspaper article. Under the above principles, plaintiff might have been able to pursue both theories, libel and slander, against defendant. However, plaintiff's case was tried solely on the theory of slander; no issue as to libel was submitted. In fact, plaintiff did not present the newspaper article in evidence. The jury instructions have not been included in the record, and we must assume that the judge correctly instructed the jury in accordance with the issue submitted, the issue of slander. The argument on defendant's motion for a directed verdict has been included in the record. The argument was in terms of slander. The theory upon which the case was tried must prevail in considering the appeal, interpreting the record, and determining the validity of exceptions. *Paul v. Neece*, 244 N.C. 565, 94 S.E. 2d 596 (1956). A party may not acquiesce in the trial of his case upon one theory below and then argue on appeal that it should have been tried upon another. *Bryan Builders Supply v. Midyette*, 274 N.C. 264, 162 S.E. 2d 507 (1968). To put it more colorfully, "the law does not permit parties to swap horses between courts in order to get a better mount in the Supreme Court." *Weil v. Herring*, 207 N.C. 6, 10, 175 S.E. 836, 838 (1934). This is true with respect to a motion for directed verdict. In passing upon a trial judge's ruling as to a directed verdict, we cannot review the case as the parties might have tried it; rather, we must review the case as tried below, as reflected in the record on appeal. *See Feibus & Company, Inc. v. Godley Construction Co.*, 301 N.C. 294, 271 S.E. 2d 385 (1980). This case was tried on the theory of slander, and plaintiff has not appealed or assigned as error the trial judge's failure to submit an issue as to libel. Therefore, plaintiff may not argue the law of libel on appeal.

In the present case, then, the issue for our decision is whether the evidence, when considered in the light most favorable to plaintiff, was sufficient for submission to the jury on the theory of slander. In arguing below that the evidence was insufficient, defendant stated, among other grounds, that his statement was not defamatory and that plaintiff had failed to prove special damages. We rest our decision on the second of these grounds.

Slander may be actionable *per se* or only actionable *per quod.* Special damages must be pleaded and proved in the latter case, but not the former. *Badame v. Lampke*, 242 N.C. 755, 89 S.E. 2d 466 (1955); *Williams v. Rutherford Freight Lines, Inc. and Willard v. Rutherford Freight Lines, Inc.*, 10 N.C. App. 384, 179 S.E. 2d 319 (1971). There are four categories of slander actionable *per se.*

> Decisions in this State generally limit false statements which may be classified as actionable *per se* to those which charge plaintiff with a crime or offense involving moral turpitude, impeach his trade or profession, or impute to him a loathsome disease. (A fourth category has been added by statute; that is, statements charging incontinency to a woman. G.S. 99-4.)

*Williams v. Rutherford Freight Lines, Inc. and Willard v. Rutherford Freight Lines, Inc., supra* at 388, 179 S.E. 2d at 322. The alleged slander in the present case can be actionable *per se* only if it comes under the second category listed above, *i.e.*, statements which impeach one's trade or profession. In order to come within this category of slander, a false statement must do more than merely injure a person in his business. The false statement "(1) must touch the plaintiff in his special trade or occupation, and (2) must contain an imputation necessarily hurtful in its effect on his business." *Badame v. Lampke, supra* at 757, 89 S.E. 2d at 468. The present statement, at its worst, indicates that plaintiff lied in relating the circumstances under which she left her job with the Board of Education. Such a statement does not impeach the plaintiff's occupation.

> North Carolina cases have held consistently that alleged false statements made by defendants, calling plaintiff "dishonest" or charging that plaintiff was untruthful and an unreliable employee, are not actionable per se. *See Satterfield v. McLellan Stores*, 215 N.C. 582, 2 S.E. 2d 709 (1939); *Ringgold v. Land*, 212 N.C. 369, 193 S.E. 267 (1937). Such false statements may be actionable *per quod*; if so, some special damages must be pleaded and proved. *Ringgold, supra.*

*Stutts v. Duke Power Co.*, 47 N.C. App. 76, 82, 266 S.E. 2d 861, 865 (1980). We conclude that the evidence in the present case did not show a slander actionable *per se* and, thus, that plaintiff's evidence, in order to withstand defendant's motions for directed

verdict and judgment notwithstanding the verdict, had to show special damages.

In the law of defamation, special damage means pecuniary loss. Emotional distress and humiliation alone are not enough to support a claim actionable *per quod. Williams v. Rutherford Freight Lines, Inc. and Willard v. Rutherford Freight Lines, Inc., supra.* Furthermore, "where, as here, it is essential that some special damage must occur before a claim is actionable, *at least some special damage must have occurred by the time the action is instituted. Id.* at 390-91, 179 S.E. 2d at 324 (emphasis added). *Accord, Scott v. Harrison,* 215 N.C. 427, 2 S.E. 2d 1 (1939); *Crawford v. Barnes,* 118 N.C. 912, 24 S.E. 670 (1896). The *Scott* case was an action for slander in which the plaintiff alleged that as a result of the slander, her husband, a high school principal, had been required to accept as a condition of re-election to his position that he would not seek re-election in the future. The Supreme Court stated as follows:

> It is suggested that the condition imposed upon plaintiff's husband at the time of his re-election might eventually lead to his unemployment and result in damage to her. This, we think, is too remote and speculative for present consideration. Newell, Slander and Libel, 4th Ed., section 746, quotes *DeGrey, C.J.,* in *Onslow v. Horne,* 3 Wils., 177, 2 W. Bl., 750: "I know of no case where ever an action for words was grounded upon eventual damages which may possibly happen to a man in a future situation;" and refers to the established rule that the damages must have accrued before the institution of the suit.

*Scott v. Harrison, supra* at 431, 2 S.E. 2d at 3. The *Crawford* case was an action for slander in which the Supreme Court upheld dismissal because "[t]he special damage alleged, to-wit, the loss of the election of the plaintiff to Congress, did not accrue, according to the complaint, till 6 November, and the summons was issued 17 September. The damage not having accrued before the summons issued, the action cannot be maintained." *Crawford v. Barnes, supra* at 915-16, 24 S.E. at 671.

The alleged slander in the present case occurred on 2 May 1980. Plaintiff instituted her action on 13 May 1980. The evidence reveals no special damages resulting from the alleged slander at

that time. The loss of plaintiff's job with the Board of Education, of course, resulted from the events of 1 May 1980, not from the alleged slander of 2 May 1980. Plaintiff testified that she sought other employment, but she was not sure of the dates involved. She was not sure whether she had sought other employment at the time she filed this action. Plaintiff testified that she did not receive employment in May 1980, that she received employment in June 1980 which she held for only two weeks and lost by "mutual agreement" and that she received employment in August 1980 that she was still holding at the time of trial. There is nothing in her testimony to indicate that she ever was denied employment because of the alleged slander by defendant. Plaintiff also testified that she fell behind in monthly payments on various accounts in June and July of 1980, and that in October 1980 she filed "a Chapter Thirteen, which is part of the Bankruptcy Code, in which I made monthly payments to the Court to pay off my debts." This testimony shows no pecuniary loss, and it involves events occurring after institution of this action on 13 May 1980. Finally, plaintiff testified that she suffered worry, loss of sleep, and emotional problems that led her to go to a doctor for medication in June and July of 1980. Special damages include illness sufficient to require medical care and expense. *See Bell v. Simmons, supra.* However, plaintiff's testimony shows no such damages before 13 May 1980 and fails to show the amount of any medical expenses incurred thereafter.

Therefore, plaintiff failed to show special damages sufficient to support a claim for slander actionable *per quod,* and defendant's motions for directed verdict and judgment notwithstanding the verdict should have been allowed.

Reversed.

Judge BECTON concurs.

Judge WELLS concurs in result.