An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-2

Filed 15 October 2025

Iredell County, No. 22CVS000036-480

DONALD DELOY, Plaintiff,

v.

DARLENE LEKOWSKI, Defendant.

Appeal by Plaintiff from Order entered 5 February 2023, 13 May 2024, and 16 May 2024 by Judge R. Stuart Albright in Iredell County Superior Court. Cross-Appeal by Defendant from Orders entered 4 and 5 February 2023. Heard in the Court of Appeals 20 May 2025.

> *Pope McMillan, P.A., by Christian Kiechel, for Plaintiff-Appellant/Cross-Appellee.*
>
> *McAngus, Goudelock & Courie, PLLC, by Jeffrey B. Kuykendal, for Defendant-Appellee/Cross-Appellant.*

HAMPSON, Judge.

## **Factual and Procedural Background**

Donald DeLoy (Plaintiff) appeals from a Judgment entered upon a jury verdict finding him liable for libel *per quod* against Darlene Lekowski (Defendant); a

Punitive Damages Opinion; an Order denying Plaintiff's Motion for Judgment Notwithstanding the Verdict; and a Supplemental Judgment awarding Defendant certain attorney fees and costs. Defendant also cross-appeals from an Order granting directed verdict in favor of Plaintiff on Defendant's counterclaims for libel *per se*, slander *per se*, and slander *per quod*. The Record before us tends to reflect the following:

The parties in this case are siblings. The underlying dispute between the parties began with a disagreement over text message related to the care of their father. After trading some slights related to the issue, Defendant wrote to Plaintiff: "I'd be very very careful how you talk to me and treat me as I could completely destroy your life if you want me to."[1] Defendant then went on to accuse Plaintiff of raping her when they were children, repeatedly called him a "rapist," and alleged Plaintiff had "destroyed my entire childhood and upbringing." Plaintiff repeatedly denied these accusations. Defendant continued making the same allegations by text, including to Plaintiff's wife who contacted Defendant using Plaintiff's phone.

On 12 May 2021, Defendant emailed Plaintiff and their three other siblings generally accusing Plaintiff and another brother of sexually assaulting her when all parties were children and claimed they had later admitted to the assaults. In pertinent part, Defendant's email read as follows:

---

[1] The text messages and emails in this case contain multiple spelling and grammatical errors. We reproduce them here as originally written.

Good morning.  I've been getting calls, texts and emails that a lot of misinformation is being told about the situation so I am sending this email to state the facts:

1) I was mentally and physically sexually assaulted at a very young age by both [brother] and [Plaintiff] who at one point have both admitted to it[.]

. . . .

6) I have never been on psych medication nor have I ever had a nervous breakdown.  Those are all lies and I would like to see proof with any medical paperwork either one of you have that would prove this.  What happened is I became incredibly frustrated by the way [Plaintiff] was texting and almost screaming at me that dad needed glasses.  After all I've done for mom & dad, I told him he needed to be extremely careful the way he talks to me going forward as I'm not going to take that behavior anymore.

. . . .

Again, I'm not going to accept any threats or any lies.  We all know the truth and what happened.  Again, all that was needed was a very sincere apology by June by [Plaintiff] chose to call me crazy instead and started blowing it up and calling everyone.

Later the same day, Plaintiff responded: "This is complete BS!  I have never admitted to any part of her allegations! . . . [Defendant] you need real help!"  After an intermediary email not relevant to this appeal, Plaintiff wrote:

You are completely consumed by your hate! Facts can be facts as they never happened!

I never admitted to any of your claims at any time!

This has nothing to due without your past and you fake BS! This has to do with the fact that you are a complete Psychopath that could not handle losing control over someone you never had

- 3 -

control of to begin with!

. . . .

You really need to get some help! You are completely dilution all!

Two weeks later, Plaintiff sent a final email to Defendant on the email chain, stating: "You are a psychopathic lier! I never did any of this and you know it! You better pray to god I do not meet up with you and your family again!"

Plaintiff filed a Complaint on 6 January 2022 alleging Defendant had defamed him and specifically bringing claims for libel *per se*, slander *per se*, and intentional infliction of emotional distress (IIED), and asking for punitive damages. On 14 March 2022, Defendant filed an Answer and Counterclaims, alleging libel *per se*, slander *per se*, libel *per quod*, slander *per quod*, and IIED, and seeking punitive damages. Plaintiff voluntarily dismissed his claim for IIED prior to trial.

This matter came on for trial on 29 January 2024. At trial, Defendant testified to the truth of the allegations she had made against Plaintiff. Six other witnesses testified regarding the underlying sexual assault allegations with conflicting evidence. Rich Nesbit, a life coach, also testified for Defendant. Nesbit's testimony was submitted by video deposition. Nesbit testified he is not a licensed mental health professional, but he had met Defendant in 2005 and began providing her with, essentially, marriage counseling and individual counseling. Defendant testified that her counseling with Nesbit since May 2021 had focused on "[d]ealing with the fact that [Plaintiff]'s calling me a liar and the fact that all of this has bubbled up and

surfaced." Defendant also mentioned two other individuals she had seen for counseling since May 2021, but neither testified at trial and their substantive testimony sought to be admitted was excluded. Defendant stated "I'm reliving everything all over again, and I've had to go on medication to help me. I've had to have therapy to help me through this." Specifically, Defendant testified she had spent "a little over $17,000.00" on Nesbit and the two therapists. Defendant presented no other evidence regarding the cost of any mental health treatment she had received.

At the close of both sides' cases in chief, the trial court heard arguments on Plaintiff's Motion for Directed Verdict on all of Defendant's claims. The trial court granted directed verdict for Plaintiff on Defendant's claims for libel *per se*, slander *per se*, and IIED; however, the trial court allowed Defendant's claims on libel *per quod* and slander *per quod* to go forward. After rebuttal evidence and during the charge conference, the trial court dismissed Defendant's claim for slander *per quod*. The trial court stated: "One of the elements the defendant has to prove for a slander per quod claim is that the defendant intended the statement to charge the defendant with having committed the crime or offense involving moral turpitude and/or impeach the defendant and the defendant's trade or profession and/or impute to the defendant a loathsome disease. None of those were proven in this case or alleged in the complaint[.]"

On 5 February 2024, the jury returned a verdict rejecting Plaintiff's claims for slander and libel. The jury found in favor of Defendant on her claim for libel *per quod*.

The jury awarded compensatory damages of $150,000.00 and punitive damages of $60,000.00 to Defendant. The same day, the trial court entered a Punitive Damages Opinion upholding the jury's award.

On 14 February 2024, Plaintiff filed a Motion for Judgment Notwithstanding Verdict (JNOV), Motion for Amendment of Findings, Motion for New Trial, and Motion for Relief from Judgment. On 13 May 2024, the trial court entered an Order denying Plaintiff's post-trial Motions and a Supplemental Judgment awarding $9,794.15 in costs and $30,000.00 in attorney fees to Defendant. Plaintiff timely filed Notice of Appeal on 28 May 2024, appealing the Supplemental Judgment, the Order denying his post-trial Motions, the Judgment, and the Punitive Damages Opinion. On 7 June 2024, Defendant filed Cross-Notice of Appeal from the trial court's grant of directed verdict for Plaintiff on Defendant's claims for libel *per se*, slander *per se*, and slander *per quod*.

## Issues

The issues on appeal are whether the trial court erred by: (I) declining to grant directed verdict or JNOV for Plaintiff on Defendant's counterclaim for libel *per quod* and granting directed verdict in favor of Plaintiff on Defendant's claims for libel *per se*, slander *per se*, slander *per quod*, and intentional infliction of emotional distress; and (II) declining to reduce the damages awarded to Defendant.

## Analysis

I.    Directed Verdicts and JNOV

"When considering the denial of a directed verdict or JNOV, the standard of review is the same." *Green v. Freeman*, 367 N.C. 136, 140, 749 S.E.2d 262, 267 (2013). "In determining the sufficiency of the evidence to withstand a motion for directed verdict, all of the evidence which supports the non-movant's claim must be taken as true and considered in the light most favorable to the non-movant, giving the non-movant the benefit of every reasonable inference which may legitimately be drawn therefrom and resolving contradictions, conflicts, and inconsistencies in the non-movant's favor." *Turner v. Duke Univ.*, 325 N.C. 152, 158, 381 S.E.2d 706, 710 (1989).

"To survive a motion for directed verdict or JNOV, the non-movant must present 'more than a scintilla of evidence' to support its claim." *Morris v. Scenera Rsch., LLC*, 368 N.C. 857, 861, 788 S.E.2d 154, 157 (2016) (quoting *Stark ex rel. Jacobsen v. Ford Motor Co.*, 365 N.C. 468, 480, 723 S.E.2d 753, 761 (2012)). "A scintilla of evidence is defined as very slight evidence." *Hayes v. Waltz*, 246 N.C. App. 438, 442-43, 784 S.E.2d 607, 613 (2016) (citation omitted). Still, the non-movant's evidence must "do more than raise a suspicion, conjecture, guess, surmise, or speculation as to the pertinent facts in order to justify its submission to the jury." *Jenrette Transp. Co. v. Atl. Fire Ins. Co.*, 236 N.C. 534, 539, 72 S.E.2d 481, 485 (1952) (citation omitted). We review *de novo* a trial court's determination on a motion for directed verdict or JNOV. *Morris*, 368 N.C. at 861, 788 S.E.2d at 158 (citation omitted).

Here, Plaintiff challenges the denial of his Motion for Directed Verdict and

Motion for JNOV on Defendant's claim for libel *per quod*. Defendant, in turn, contests the trial court's grant of directed verdict for Plaintiff on Defendant's claims for libel *per se*, slander *per se*, slander *per quod*, and IIED. We address each in turn.

A.    *Libel Per Quod*

Plaintiff argues the trial court erred by denying his Motions for Directed Verdict and JNOV on Defendant's claim for libel *per quod*. "In North Carolina, the term defamation applies to the two distinct torts of libel and slander." *Boyce & Isley, PLLC v. Cooper*, 153 N.C. App. 25, 29, 568 S.E.2d 893, 898 (2002). "Generally, to make out a prima facie case for defamation, plaintiff must allege and prove that the defendant made false, defamatory statements of or concerning the plaintiff, which were published to a third person, causing injury to the plaintiff's reputation." *Griffin v. Holden*, 180 N.C. App. 129, 133, 636 S.E.2d 298, 302 (2006) (citation and quotation marks omitted).

"Libel is generally divided into three classes: (1) publications obviously defamatory which are called libel *per se*; (2) publications susceptible of two interpretations one of which is defamatory and the other not; and (3) publications not obviously defamatory but when considered with innuendo, colloquium, and explanatory circumstances become libelous, which are termed libel *per quod*." *Id.* at 133-34, 636 S.E.2d at 302-03 (quoting *Renwick v. News & Observer Publ'g Co.*, 310 N.C. 312, 316, 312 S.E.2d 405, 408 (1984)). "The elements of [claimant]'s *prima facie* case for libel *per quod* . . . include the following: (1) defendant published false

statements, (2) the statements were defamatory, (3) the statements were of or concerning the [claimant], (4) the statements were published to a third person, [and] (5) the publication caused special damage to [claimant]." *Id.* at 136, 636 S.E.2d at 304.

"[W]hen a publication is libelous *per quod*, the injurious character of the words and some special damage must be pleaded and proved." *Id.* at 134, 636 S.E.2d at 303 (citing *Renwick*, 310 N.C. at 316, 312 S.E.2d at 408). "[W]henever an allegedly defamatory publication is ambiguous or capable of a meaning other than the obvious one, it is for the jury to determine how it was understood by the recipient. However, it is the province of the court to determine in the first instance whether a communication is capable of a defamatory meaning." *Tyson v. L'Eggs Prods. Inc.*, 84 N.C. App. 1, 13, 351 S.E.2d 834, 841 (1987) (citing *Bell v. Simmons*, 247 N.C. 488, 495, 101 S.E.2d 383, 388 (1958)). "In determining whether a published article is libelous, it must be read and considered in its setting." *Id.* (citing *Yancey v. Gillespie*, 242 NC. 227, 230, 87 S.E.2d 210, 212 (1955)). "The circumstances of the publication are pertinent, as well as the hearers' knowledge of facts which would influence their understanding of the words used." *Id.* (citing *Oates v. Wachovia Bank & Trust Co.*, 205 N.C. 14, 17, 169 S.E. 869, 871 (1933)).

For example, in *Tyson*, employees made allegations of "terrible working conditions" at their workplace to the editor of a local newspaper and a local news network. *Id.* at 9, 351 S.E.2d at 839. The defendant employer "responded directly to

these assertions 'as a bunch of hogwash.'" *Id.* The employer further challenged employees to "'come out of the woodwork and speak their own minds,' and caustically criticized people who 'want the money but don't want to work for it.'" *Id.* at 10, 351 S.E.2d at 839. In determining the letter was not defamatory as a matter of law, this Court noted the employer's statement was "a direct response to the plaintiffs' own statements which by their nature invited response, and which were published on the editorial page of the local newspaper, a forum in which plaintiffs knew others would have an opportunity to state a contrary view." *Id.* at 13, 351 S.E.2d at 841. The Court further acknowledged the opinions of the individual defendants were "expressed in a robust manner and with some anger or hostility toward the plaintiffs. However, the plaintiffs having publicly expressed their own strong feelings on a controversial issue of public interest, must have some 'thickness of skin' when the response is less than favorable." *Id.* Indeed, the Court concluded "the words used do not go beyond the bounds of proper debate, and . . . the letter read as a whole and considered in its setting is not reasonably susceptible of the defamatory meaning alleged by the plaintiffs." *Id.*

Here, viewing the evidence in the light most favorable to Defendant as the non-movant, Defendant presented more than a scintilla of evidence to support each element of her libel *per quod* claim. Defendant alleges as defamatory Plaintiff's statements that Defendant was lying when she wrote that Plaintiff sexually assaulted her when they were children. There is no question Plaintiff's statements

were of or concerning Defendant or that they were published to a third party. As to the remaining elements of libel *per quod*, Defendant's testimony is sufficient to support her claim that Plaintiff's statements were false. Although there may be significant contradictory evidence and evidence calling into question the credibility of Defendant's and others' testimony, such issues are the purview of the jury, and this Court will not reweigh credibility determinations on appeal. *State v. Borlase*, 387 N.C. 295, 307-08, 912 S.E.2d 795, 806 (2025) ("[A]n important aspect of the trial court's role as finder of fact is assessing the demeanor and credibility of witnesses, often in light of inconsistencies or contradictory evidence. It is in part because the trial court is uniquely situated to make this credibility decision that appellate courts may not reweigh the underlying evidence presented at trial.") (quoting *Matter of A.A.M.*, 379 N.C. 167, 174, 864 S.E.2d 509, 515 (2021)). Our Courts have consistently noted that statements calling another a liar may be defamatory *per quod*. *See, e.g.*, *Stutts v. Duke Power Co.*, 47 N.C. App. 76, 82, 266 S.E.2d 861, 865 (1980). Moreover, Plaintiff's statements went beyond mere accusations of lying; rather, Plaintiff's statements, considered in context, claiming Defendant was a "psychopathic liar," "consumed by hate," and "delusional" could be viewed as sufficiently derogatory to be defamatory. And, indeed, Plaintiff acknowledged that if his statements were false, they would be defamatory.

Defendant also sufficiently supported her claim for special damages in her testimony regarding the costs of her therapy and other mental health services related

to Plaintiff's statements. As we will explain in greater detail below, although mental anguish and emotional suffering alone are insufficient to support special damages, costs pertaining to mental health treatment can constitute special damages. *See Tallent v. Blake*, 57 N.C. App. 249, 255, 291 S.E.2d 336, 341 (1982) ("Special damages include illness sufficient to require medical care and expense."). Although Plaintiff's statements were not obviously defamatory on their face, when considered in context— the private family setting and the nature of the underlying allegations—they may be reasonably interpreted as defamatory. Thus, Defendant presented sufficient evidence to submit her claim for libel *per quod* to the jury.

Plaintiff argues his statements were "unactionable rhetorical hyperbole." "Rhetorical hyperbole and expressions of opinion not asserting provable facts are protected speech." *Daniels v. Metro Magazine Holding Co., LLC*, 179 N.C. App. 533, 539, 634 S.E.2d 586, 590 (2006). Further, rhetorical hyperbole "might appear to make an assertion, but a reasonable reader or listener would not construe that assertion seriously." *Id.* Yet the example Plaintiff points to only serves to underscore the difference between such rhetorical hyperbole and Plaintiff's statements here. In *Daniels*, the defendant stated an insurance adjustor "intended to take [the defendant] to a 'gas chamber[.]'" *Id.* at 541, 634 S.E.2d at 591. This Court in that case held that statement, as well as the defendant's statements the insurance adjustor's actions "were equivalent to those of the 'former Soviet security police'" or that she was a fascist, were hyperbole that could not reasonably have been interpreted as stating an

actual fact. *Id.*

In contrast, whether Defendant was lying about her previous sexual assaults *is* a provable fact. *See Lewis v. Rapp*, 220 N.C. App. 299, 306, 725 S.E.2d 597, 603 (2012) (holding publication stating a candidate violated Code of Judicial Conduct was defamatory because it could be investigated and proven false); *Desmond v. News & Observer Publ'g Co.*, 375 N.C. 21, 39, 846 S.E.2d 647, 659 (2020) (statements that "imply a false assertion of fact" may be actionable for defamation even where expressed as opinion); *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 21, 111 L. Ed. 2d 1 (1990) (allegations petitioner had lied in testimony before OSHAA board was "not the sort of loose, figurative, or hyperbolic language" that would preclude a defamation claim). Moreover, calling someone a "psychopathic liar" is in no way comparable to stating someone intended to take another "to the gas chamber." Plaintiff's statements should also be considered in their entirety: not only did Plaintiff call Defendant a "psychopathic liar," he also told Defendant she "need[ed] serious help[.]" Given the severity of the allegations, a person could reasonably infer Plaintiff meant seriously that Defendant was mentally unwell. Thus, Plaintiff's statements were "*capable* of a defamatory meaning," which is the threshold question. *Tyson*, 84 N.C. App. at 13, 351 S.E.2d at 841 (citing *Bell*, 247 N.C. at 495, 101 S.E.2d at 388) (emphasis in original).

Likewise, Plaintiff's argument suggesting his statements could not be libelous because he was merely responding to or denying Defendant's allegations is mistaken.

Although it is true the cases to which Plaintiff cites all concern allegedly defamatory statements made in the first instance by the defendant, Plaintiff points to no case articulating that such distinction is at all relevant in a defamation action. Indeed, Plaintiff devotes substantial argument to *Tyson*; however, that case makes no mention of the fact the defendant-employer was responding to the plaintiff-employees' statements being material to determining whether the employer's statements were defamatory. In effect, Plaintiff asks us to infer a rule based on the circumstances of several cases where no rule has ever been articulated. We decline to do so.

Thus, Defendant presented sufficient evidence to submit her claim for libel *per quod* to the jury. Therefore, the trial court did not err in declining to grant Plaintiff's Motion for Directed Verdict or Motion for JNOV.

B.      *Libel Per Se and Slander Per Se*

Defendant argues the trial court erred by granting Plaintiff's Motions for Directed Verdict or JNOV on Defendant's claims for libel and slander *per se*. "[A] libel *per se* is a publication by writing, printing, signs or pictures which, when considered alone without innuendo, colloquium or explanatory circumstances: (1) charges that a person has committed an infamous crime; (2) charges a person with having an infectious disease; (3) tends to impeach a person in that person's trade or profession; or (4) otherwise tends to subject one to ridicule, contempt or disgrace." *Renwick*, 310 N.C. at 317, 312 S.E.2d at 408-09 (citation omitted). Similarly, "[s]lander *per se* is 'an

oral communication to a third party which amounts to (1) an accusation that impeaches the plaintiff committed a crime involving moral turpitude; (2) an allegation that impeaches the plaintiff in his trade, business, or profession; or (3) an imputation that the plaintiff has a loathsome disease.'" *Boyce & Isley*, 153 N.C. App. at 29-30, 568 S.E.2d at 898 (quoting *Phillips v. Winston-Salem/Forsyth Cnty. Bd. of Educ.*, 117 N.C. App. 274, 277, 450 S.E.2d 753, 756 (1994), *disc. rev. denied*, 340 N.C. 115, 456 S.E.2d 318 (1995)).

Our Courts have consistently held that " 'alleged false statements . . . calling [a party] dishonest or charging that [a party] was untruthful and an unreliable employee, are not actionable *per se*.'" *Izydore v. Tokuta*, 242 N.C. App. 434, 445, 775 S.E.2d 341, 349 (2015) (quoting *Stutts*, 47 N.C. App. at 82, 266 S.E.2d at 865). Our Courts have so held with respect to both libel and slander. *See, e.g., Gibson v. Mut. Life Ins. Co. of N.Y.*, 121 N.C. App. 284, 289, 465 S.E.2d 56, 60 (1996) (slander); *Pierce v. Atl. Grp., Inc.*, 219 N.C. App. 19, 35, 724 S.E.2d 568, 579 (2012) (libel); *Morris v. Bruney*, 78 N.C. App. 668, 677, 338 S.E.2d 561, 567 (1986) (slander); *Ringgold v. Land*, 212 N.C. 369, 370-71, 193 S.E. 267, 268 (1937) (slander); *Greensboro Scuba Sch., LLC v. Robertson*, 242 N.C. App. 383, 776 S.E.2d 363, 2015 WL 4429665, *4 (2015) (unpublished) (libel); *Richardson v. Mancil*, 208 N.C. App. 569, 706 S.E.2d 843, 2010 WL 5464905, *5 (unpublished) (2010) (libel and slander). While most of these opinions deal with conflict between employees and employers, our Courts have also applied this principle outside of the employment context. *See Bruney*, 78 N.C. App.

at 677, 338 S.E.2d at 567 (allegations by child's mother that child's father had libeled her to other family members and the minor child); *Ringgold*, 212 N.C. at 370-71, 193 S.E.2d at 267-68 (allegations defendant called plaintiff "a damn common dishonest man"); *Richardson*, 208 N.C. App. 569, 2010 WL 5464905, *5 (allegations defendant HOA board member failed to pay bills to third parties). Thus, consistent with our caselaw, we conclude Plaintiff's statements were not defamatory *per se*.

Moreover, with respect to Defendant's claim for slander *per se*, we note slander is defined in a more limited fashion than libel. "This Court has consistently stated that only three types of defamatory statements, if published to a person other than the one defamed, will support an action for slander *per se*: 'those which (1) charge [claimant] with a crime or offense involving moral turpitude, (2) impeach his trade or profession, or (3) impute to him a loathsome disease.' " *Donovan v. Fiumara*, 114 N.C. App. 524, 527-28, 442 S.E.2d 572, 575 (1994). *Compare Renwick*, 310 N.C. at 317, 312 S.E.2d at 408-09 (stating libel *per se* encompasses the same three above categories as well as those statements which "(4) otherwise tend[ ] to subject one to ridicule, contempt or disgrace."). Indeed, "[t]he policy of the law has much restricted the range of defamatory utterances which are actionable *per se*." *Penner v. Elliott*, 225 N.C. 33, 34, 33 S.E.2d 124, 125 (1945). "Consequently courts have consistently refrained from expanding the number or the scope of categories of spoken defamatory words which are actionable without allegation and proof of damages." *Donovan*, 114 N.C. App. at 528, 442 S.E.2d at 575 (citing *Hayes v. Smith*, 832 P.2d 1022, 1024-25

(Colo. Ct. App. 1991)). The statements at issue do not fall into any of the three categories of slander *per se* established in our caselaw.

Defendant contends, however, that the first category of slander *per se* is more expansive than the above-quoted language in *Donovan*. Specifically, Defendant points to *West v. King's Dep't Store, Inc.*, 321 N.C. 698, 703, 365 S.E.2d 621, 624-25 (1988), for the proposition that slander *per se* includes "defamatory words which tended to prejudice [claimant] in his reputation, office, trade business or means of livelihood *or to hold him up to disgrace, ridicule or contempt*[.]" (emphasis added) (citing *Presnell v. Pell*, 298 N.C. 715, 260 S.E.2d 611 (1979) and *Morrow v. Kings Dep't Stores, Inc.*, 57 N.C. App. 13, 290 S.E.2d 732 (1982), *disc. rev. denied*, 306 N.C. 385, 294 S.E.2d 210 (1982)). This argument was squarely raised by the appellant in *Donovan* and rejected by our Supreme Court.

In *Donovan*, the appellant relied on the identical italicized portion of *West* "to support their argument that the traditional classifications of slander *per se* were broadened by the Court." 114 N.C. App. at 532, 442 S.E.2d at 577. First, the *Donovan* Court looked to contemporary decisions from the Court of Appeals that had cited to or quoted from *West* and determined none of them "concern themselves, directly or indirectly, with whether there now exists a judicially created fourth category of defamatory utterances deemed slander *per se*—those tending to hold a person up to 'disgrace, ridicule or contempt.'" *Id.* at 532-33, 442 S.E.2d at 577-78. The Court went on to determine the portion of *West* in question was dicta because that language "was

unnecessary to the court's holding[.]" *Id.* at 533, 442 S.E.2d at 578 (citing BLACK'S LAW DICTIONARY 454 (6th ed. 1990) ("Statements and comments in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case in hand are *obiter dicta,* and lack the force of an adjudication.")). Underscoring this point, the Court added "[n]otably absent was any indication by the [*West*] Court of its intent to establish a new category of slander *per se*," which was "significant in light of the lack of prior case authority[.]" *Id.* Finally, the *Donovan* Court noted the cases to which *West* cited—*Presnell*, 298 N.C. 715, 260 S.E.2d 611 (1979) and *Morrow*, 57 N.C. App. 13, 290 S.E.2d 732 (1982)—do not contain the language at issue. *Id.* at 533-34, 442 S.E.2d at 578. Accordingly, our Supreme Court rejected the appellant's argument and declined to disturb the trial court's decision.[2]

We find *Donovan* persuasive and controlling: the statement in *West* that

---

[2] Since *Donovan*, our Courts have overwhelmingly turned toward it and away from *West* for guidance on this issue. Of the twenty cases that cite to *West* since *Donovan*'s publication, only five cite to *West* for the contested language. *See Smith v. Carolina Coach Co.*, 120 N.C. App. 106, 461 S.E.2d 362 (1995); *White v. Trew*, 217 N.C. App. 574, 720 S.E.2d 713 (2011); *rFactr, Inc. v. McDowell*, 2020 WL 7235101 (N.C. Bus. Ct.); *rFactr, Inc. v. McDowell*, 2023 WL 576534 (N.C. Bus. Ct.); *Hwang v. Carins*, 915 S.E.2d 425 (2025). Two of those cases—*Smith* and *White*—concern a publication issue. Both *rFactr* cases actually quote *Donovan* and note in their citation that the quoted portion of *Donovan* quotes *White*, which suggests the Court did not consider the substantive issue in that portion of *Donovan*. Further, those opinions are not binding authority on this Court. *See Estate of Browne v. Thompson*, 219 N.C. App. 637, 640, 727 S.E.2d 573, 576 (2012) (noting the North Carolina Business Court "is a special Superior Court, the decisions of which have no precedential value in North Carolina."), *disc. rev. denied*, 366 N.C. 426, 736 S.E.2d 495 (2013). The final case citing to *West* is the concurrence in *Hwang*, which quotes the contested portion of *West*, but goes on to conclude the plaintiff had a colorable claim for slander *per se* because the plaintiff's livelihood was negatively impacted. 915 S.E.2d at 434.

slander *per se* may include statements which "hold [a claimant] up to disgrace, ridicule or contempt" is dicta and, therefore, is disregarded. This leaves us with the three traditional, well-established categories of slander *per se*. Plaintiff's statements do not fit in any of them; thus, even were our caselaw not clear that calling another dishonest is not actionable as slander *per se*, we would reach the same conclusion here. Thus, Defendant did not establish a prima facie case for libel *per se* or slander *per se*. Therefore, the trial court did not err in dismissing Defendant's claims.

C.     *Slander Per Quod*

Defendant also argues the trial court erred in granting Plaintiff's Motion for Directed Verdict or JNOV on her claim for slander *per quod*. In contrast to slander *per se*, "[s]lander *per quod* relates to false remarks which may 'sustain an action only when causing some special damages (*per quod*), in which case both the malice and the special damage must be alleged and proved.' " *Izydore*, 242 N.C. App. at 445, 775 S.E.2d at 349 (quoting *Beane v. Weiman Co.*, 5 N.C. App. 276, 277, 168 S.E.2d 236, 237 (1969)). "This latter class comprises a remark which is not defamatory on its face but causes injury with 'extrinsic, explanatory facts.' " *Id.* (quoting *Donovan*, 114 N.C. App. at 527, 442 S.E.2d at 574-75). "To prevail on a slander *per quod* claim, 'the injurious character of the words and some special damage must be pleaded and proved.' " *Id.* (quoting *Beane*, 5 N.C. App. at 278, 168 S.E.2d at 238).

It is axiomatic that a single statement, if defamatory, must be either libel or slander, depending on whether it was oral or written—but it cannot be both

simultaneously. *See Tallent*, 57 N.C. App. at 251, 291 S.E.2d at 338 ("In general, libel is written while slander is oral." (citation omitted)). A statement made in one format may be repeated in another and thus give rise to claims for both torts, but this would require two separate transactions. *See id.* at 251-52, 291 S.E.2d at 338 ("[A]n interview given to a newspaper reporter may support an action for libel as well as slander. The speaking of defamatory words to a newspaper reporter will support an action for slander. However, the speaking of such words to a reporter will also support an action for libel if the speaker intends that his words be embodied forthwith in a physical form and the words are subsequently so embodied." (citation omitted)). Thus, it appears the trial court's decision to submit only the charge of libel *per quod* to the jury is consistent with the law in categorizing the statements in Plaintiff's emails as written rather than oral and served to limit the confusion of the jury.

Even assuming *arguendo* that directed verdict in Plaintiff's favor on the claim of slander *per quod* was error, any error would be harmless because the damages alleged for each claim were the same—the cost of Defendant's therapy, her mental anguish, etc. *See* N.C.R. Civ. P. Rule 61 (2023) ("[N]o error or defect in any ruling or order or in anything done or omitted by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action amounts to the denial of a substantial right."). Moreover, because Defendant's claims for libel *per quod* and slander *per quod* stem from the same statements, even had the jury found

for Defendant on both claims, Defendant would have had to choose which would be the basis for her recovery under the doctrine of election of remedies. "The purpose of the doctrine of election of remedies is not to prevent recourse to any remedy, but to prevent double redress for a single wrong." *Smith v. Gulf Oil Corp.*, 239 N.C. 360, 79 S.E.2d 880, 885 (1954).

Thus, even if the trial court's grant of directed verdict on Defendant's claim for slander *per quod* was erroneous, Defendant has not established any error prejudiced her or otherwise amounted to the "denial of a substantial right." N.C.R. Civ. P. Rule 61 (2023). Therefore, any error as to this claim was harmless error.

D. *Intentional Infliction of Emotional Distress*

Defendant argues the trial court erred by granting Plaintiff's Motion for Directed Verdict or JNOV on her claim for IIED.

Defendant's Notice of Cross-Appeal, however, stated Defendant "hereby gives notice of her cross-appeal to the North Carolina Court of Appeals from the oral order on the record of the Honorable R. Stuart Albright . . . which granted directed verdict to Plaintiff/Counterclaim Defendant, Donald Deloy, as to Lekowski's counterclaims for Libel per se, Slander per se, and Slander per quod." Defendant's Cross Notice of Appeal, thus, did not include any reference to appeal from the grant of directed verdict for Plaintiff on her claim for IIED. Rule 3(d) of the North Carolina Rules of Appellate procedure provides a notice of appeal "*shall designate* the judgment or order from which appeal is taken[.]" N.C.R. App. P. 3(d) (2025). "Rule 3 is

jurisdictional, and if the requirements of the rule are not complied with, the appeal must be dismissed." *Foreman v. Sholl*, 113 N.C. App. 282, 291, 439 S.E.2d 169, 175 (1994) (citation omitted). "[T]he appellant must appeal from each part of the judgment or order appealed from which appellant desires the appellate court to consider[.]" *Smith v. Indep. Life Ins. Co.*, 43 N.C. App. 269, 272, 258 S.E.2d 864, 866 (1979).

For example, in *Rite Color Chem. Co. v. Velvet Textile Co.*, the trial court entered an order determining the contract at issue in the case was not unconscionable and entered a directed verdict for the plaintiff on the defendant's counterclaim for unfair and deceptive trade practices. 105 N.C. App. 14, 16, 411 S.E.2d 645, 646 (1992). The defendant filed for leave to amend its answer and counterclaim, which was denied by a written order. *Id.* at 15, 411 S.E.2d at 646. Because the defendant's notice of appeal identified only the issues of unconscionability and unfair and deceptive trade practices, we held we were without jurisdiction to review the denial of the motion to amend. *Id.* at 17, 411 S.E.2d at 647.

It is unclear from our caselaw whether the trial court's simultaneous oral resolution of multiple causes of action constitutes a single order or multiple orders for the purposes of Rule 3(d), such that an appellant must identify each individual ruling made by the trial court in their notice of appeal. We have stated: "As a general rule, the appellate court obtains jurisdiction only over the *rulings* specifically designated in the notice of appeal as the ones from which the appeal is being taken."

- 22 -

*Chee v. Estes*, 117 N.C. App. 450, 452, 451 S.E.2d 349, 350 (1994) (emphasis added). However, *Chee* and other opinions using this language do not rely on that distinction, as they address separate orders. *Id.* (no jurisdiction over motion for new trial when notice of appeal designates only trial judgment); *Ochsner v. N.C. Dep't of Revenue*, 268 N.C. App. 391, 399, 835 S.E.2d 491, 497 (2019) (notice designating final order of trial court did not confer jurisdiction to review grant of protective order). "Language in an opinion not necessary to the decision is *obiter dictum* and later decisions are not bound thereby." *Trs. of Rowan Tech. College v. J. Hyatt Hammond Assocs., Inc.,* 313 N.C. 230, 242, 328 S.E.2d 274, 281 (1985). As noted above, we have also stated that "the appellant must appeal from each part of the judgment or order appealed from which appellate desires the appellate court consider in order for the appellate court to be vested with jurisdiction to determine such matters." *Smith,* 43 N.C. App. at 272, 258 S.E.2d at 866 (citing N.C. R. App. P. Rule 3(d)). However, in *Smith* we held the appellant was *not* required to notice the portion of the trial court's order ruling on the defendant's motion to dismiss because the notice of appeal identified the trial court's summary judgment ruling, which the motion to dismiss had merged with under Rule 12(b)(6). *Id.* Our caselaw does not appear to resolve the question of whether Defendant is limited to appealing only those claims identified in the Notice of Appeal or may raise arguments related to the claim simultaneously resolved by the trial court in its oral ruling.

Assuming we have jurisdiction to review this issue, the trial court did not err

in granting directed verdict on Defendant's counterclaim for Intentional Infliction of Emotional Distress.

"The essential elements of an action for [IIED] are 1) extreme and outrageous conduct by the defendant, 2) which is intended to cause and does in fact cause 3) severe emotional distress." *Waddle v. Sparks*, 331 N.C. 73, 82, 414 S.E.2d 22, 27 (1992) (citation and quotation marks omitted). We address the first and third elements of the claim.

Defendant has failed to produce evidence showing Plaintiff's conduct was extreme and outrageous. "The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. . . . [P]laintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind." *Chidnese v. Chidnese*, 210 N.C. App. 299, 316, 708 S.E.2d 725, 738 (2011) (quoting *Briggs v. Rosenthal*, 73 N.C. App. 672, 677, 327 S.E.2d 308, 311 (1985) (citation omitted)). "Conduct is extreme and outrageous when it is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (citing *Johnson v. Colonial Life & Accident Ins. Co.*, 173 N.C. App. 365, 373, 618 S.E.2d 867, 872 (2005)). "[T]his Court has set a high threshold for a finding that conduct meets the standard" of extreme and outrageous conduct. *Dobson v. Harris*, 134 N.C. App. 573, 578, 521 S.E.2d 710, 715 (1999), *rev'd on other grounds*, 352 N.C.

77, 530 S.E.2d 829 (2000). "The determination whether conduct rises to the level of extreme and outrageous behavior is a question of law." *Foster v. Crandell*, 181 N.C. App. 152, 168, 638 S.E.2d 526, 537 (2007). *Id.* As above, we review questions of law *de novo*. *Stark*, 365 N.C. at 480, 723 S.E.2d at 158.

In her briefing to this Court, Defendant identifies "telling third parties that a woman lied about being sexually assaulted and raped as a child" as the conduct at issue. Defendant initially opened this topic of conversation by accusing Plaintiff, who denied the allegations. Even assuming Plaintiff's denial was untrue, we have held similar misrepresentations as failing to constitute extreme and outrageous conduct. *See, e.g., Dobson v. Harris,* 134 N.C. App. 573, 578, 521 S.E.2d 710, 715 (1999), *rev'd on other grounds*, 352 N.C. 77, 530 S.E.2d 829 (2000) (holding falsely reporting child abuse does not constitute extreme and outrageous conduct).

Defendant has identified no authority tending to show Plaintiff's conduct was extreme or outrageous. We cannot hold Plaintiff's denial of allegations that he committed sexual assault as a child to be so outrageous as to go "beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community." *Chidnese* at 316, 708 S.E.2d at 738.

Defendant has also not provided evidence she experienced severe emotional distress. Severe emotional distress is "any emotional or mental disorder, such as . . . neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and

diagnosed by professionals trained to do so." *Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.,* 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990). "It is only where [emotional distress] is extreme that the liability arises: the distress inflicted must be "so severe that no reasonable man could be expected to endure it." *Waddle,* 331 N.C. at 84, 414 S.E.2d at 27-28 (citing Restatement (Second) of Torts § 46 comt. j (1965)).

The evidence Defendant identifies as showing severe emotional distress is her own testimony that she sought counseling from her minister and mental health professionals. While she also identifies on appeal her testimony that she experienced "nightmares, sleepless nights, trauma, depression, and psychological issues," this evidence appears to have been excluded by the trial court. She presented no evidence of a medical diagnosis, and no mental health professional testified at trial.

We note that, although the definition of severe emotional distress is rooted in diagnosable conditions, an actual diagnosis by medical professionals is not always required or necessary. *Soderland v. Kuch* 143 N.C. App. 361, 371, 546 S.E.2d 632, 639 (2001). *See also Coffman v. Roberson,* 153 N.C. Ap. 618, 627-28, 571 S.E.2d 255, 261 (2002) ("[P]roof of severe emotional distress does not require medical expert testimony.").

However, we have previously held evidence similar to Defendant's to be insufficient to support a finding of severe emotional distress. We have affirmed the trial court's grant of summary judgment on IIED when the plaintiff produced as evidence of emotional distress only her own statement that she suffered from

nightmares, was afraid of the dark, and suffered stress-related illness. *Johnson v. Scott*, 137 N.C. App. 534, 539, 528 S.E.2d 402, 405 (2000). We held similarly when the only evidence offered by the plaintiffs was "their testimony stating they suffer from chronic depression." *Williams v. HomEq Servicing Corp.,* 184 N.C. App. 413, 419, 646 S.E.2d 381, 385 (2007). These uncorroborated statements were insufficient to support an IIED claim in that the plaintiffs had "fail[ed] to produce any real evidence of severe emotional distress." *Pacheco v. Rogers & Breece, Inc.,* 157 N.C. App. 445, 450, 579 S.E.2d 505, 508 (2003). *Compare Coffman*, 153 N.C. App. at 628, 571 S.E.2d at 261 (holding plaintiff had presented sufficient evidence of severe emotional distress when testimony was corroborated by that of "her friends, her family, and her pastor.").

Defendant likewise has presented only uncorroborated testimony that she sought counseling. Because she has offered no real evidence of severe emotional distress, the trial court did not err in granting Plaintiff's motion for directed verdict on Defendant's IIED claim.

II.     Special Damages

As an initial matter, Defendant contends Plaintiff's challenge to the award of special damages was not preserved for our review because Plaintiff failed to object to the jury instruction on special damages. We disagree.

Under our Rules of Appellate Procedure, "A party may not make any portion of the jury charge or omission therefrom the basis of an issue presented on appeal

unless the party objects thereto before the jury retires to consider its verdict, stating distinctly that to which objection is made and the grounds of the objection[.]" N.C.R. App. P. 10(a)(2) (2025). While Defendant accurately notes Plaintiff did not object to the jury instructions, the basis of Plaintiff's appeal is not the instructions but rather the amount of damages awarded. Indeed, Plaintiff's complaint is the trial court's decision not to reduce the special damages award because, in his view, the award did not conform with the evidence. Plaintiff could not have objected to the damages award prior to the jury's verdict. Only once the jury announced its award and the trial court entered Judgment accordingly could Plaintiff have sought to reduce the damages amount, which he did by filing a Motion for New Trial Pursuant to Rule 59. In that Motion, Plaintiff expressly argued, as here, that the damages award was excessive in light of the evidence presented. The trial court denied that Motion, and Plaintiff timely filed Notice of Appeal from that Order. Thus, Plaintiff's challenge is preserved for our review.

As above, because Plaintiff's challenge stems from the denial of his Motions for Directed Verdict and JNOV, "the proper inquiry . . . is whether the evidence was sufficient to go to the jury." *Brennan Station 1671, LP v. Borovsky*, 262 N.C. App. 1, 6, 821 S.E.2d 640, 644-45 (2018) (citation and quotation marks omitted). Again, "[t]he hurdle is high for the moving party as the motion should be denied if there is more than a scintilla of evidence to support the [nonmovant's] *prima facie* case." *Id.* at 6, 821 S.E.2d at 645 (citation omitted).

"In publications which are libelous *per quod* . . . special damages must be alleged and proved." *Renwick*, 310 N.C. at 316, 312 S.E.2d at 408 (quoting *Flake v. Greensboro News Co.*, 212 N.C. 780, 785, 195 S.E. 55, 59 (1938)). This Court has distinguished special damages and general damages:

> General damages are the natural and necessary result of the wrong, are implied by law, and may be recovered under a general allegation of damages. But special damages, those which do not necessarily result from the wrong, must be pleaded, and the facts giving rise to the special damages must be alleged so as to fairly inform the defendant of the scope of [claimant]'s demand.

*Rodd v. W.H. King Drug Co.*, 30 N.C. App. 564, 568, 228 S.E.2d 35, 38 (1976).

"In the context of an action for defamation, special damage means pecuniary loss; emotional distress and mental suffering are not alone sufficient[.]" *Donovan*, 114 N.C. App. at 527, 442 S.E.2d at 575 (citation omitted). Still, "[s]pecial damages include illness sufficient to require medical care and expense." *Tallent*, 57 N.C. App. at 255, 291 S.E.2d at 341. Plaintiff contends these holdings are contradictory. We disagree.

*Donovan* articulates that emotional or mental suffering, *standing alone*, is insufficient to support special damages. Our caselaw, however, reflects our Courts have consistently concluded healthcare, supported by evidence of the expense incurred for such care, constitutes special damages. *See, e.g., Bell*, 247 N.C. at 493, 101 S.E.2d at 387 ("It is noted that plaintiff both alleged and offered evidence tending to show that she had suffered special damages, to wit, illness sufficient to require

medical and hospital care and expense."); *Tallent*, 57 N.C. App. at 255, 291 S.E.2d at 341 ("Special damages include illness sufficient to require medical care and expense."); *Lippard v. Holleman*, 271 N.C. App. 401, 450-51, 844 S.E.2d 591, 624 (2020) (McGee, J., dissenting in part) (noting emotional and mental suffering alone are insufficient to establish special damages, but "[o]f course, some pecuniary damages may stem from mental anguish and humiliation, such as the cost of psychological treatment attributable to the defamatory statement." (citations omitted)). Although the Court in *Tallent* observed illness requiring medical care or expenses can support special damages, in that case the Court concluded the plaintiff had failed to show special damages because he had not provided any evidence of damages prior to the date of her complaint "and fail[ed] to show the amount of any medical expenses incurred thereafter." *Id.*

Plaintiff's argument on this issue is not novel. Indeed, a federal district court has already considered this argument and determined North Carolina law recognizes special damages include expenses related to emotional or mental harms stemming from libelous or defamatory statements. *Araya v. Deep Dive Media, LLC*, 966 F.Supp.2d 582, 599-600 (2013). Although *Araya* is not controlling authority on this Court, we find it persuasive.

In *Araya*, the court considered a case in which the plaintiff alleged special damages "including but not limited to the cost of treatment and counseling for psychological damages stemming from the ridicule, contempt, public scorn, disgrace,

and humiliation, which arose as a result of [Defendant]'s publication." *Id.* at 599. The defendant in that case asserted damages arising from emotional distress and mental suffering do not constitute pecuniary loss, relying principally on *Johnson v. Bollinger*, 86 N.C. App. 1, 356 S.E.2d 378 (1987); *Moore v. Cox*, 341 F.Supp.2d 570 (2004); and *Williams v. Rutherford Freight Lines, Inc.*, 10 N.C. App. 384, 179 S.E.2d 319 (1971). *Id.* However, the *Araya* court concluded "[i]n all three of these cases, though, the court goes only so far as to posit that *allegations* of emotional distress and mental suffering, by themselves, do not evidence pecuniary loss." *Id.* (emphasis in original). Our review of these cases leads us to the same conclusion.

In *Johnson*, this Court held "[e]motional distress and mental suffering are not sufficient allegations to establish a basis for relief in cases which are only actionable *per quod*." 86 N.C. App. at 11, 356 S.E.2d at 384-85. There, the plaintiff alleged "ridicule, humiliation, public contempt, loss of reputation, damage to his trade or business, and loss of business income, all to the plaintiff's damage in the sum of $20,000." *Id.* at 11, 356 S.E.2d at 385. The Court determined "[o]f these allegations, only the purported business damages and loss of business income constitute the pecuniary losses necessary for special damages arising from defamation." *Id.* Similarly, in *Moore*, the court noted "[t]o prove special damages from defamation, a plaintiff's allegations must evidence a pecuniary loss rather than simple humiliation." 341 F.Supp.2d at 574. Finally, in *Williams*, this Court stated: "It is clear that many of the damages alleged in the later pleadings are not 'special' within

the meaning of that term as used in the law of defamation, in that emotional distress and mental suffering are not alone sufficient to establish a basis for relief in cases which are actionable only Per quod." 10 N.C. App. at 390, 179 S.E.2d at 324.

None of these cases dealt with allegations of pecuniary loss stemming from mental anguish or emotional distress, as is the case here. Indeed, each of the aforementioned cases by their own terms cabin those holdings to "simple humiliation" or "ridicule" and the like "*alone.*" These are meaningfully distinct from costs and losses arising from such distress and ridicule. Such losses are readily understood as medical expenses, which our caselaw affirms can constitute special damages. *See Tallent*, 57 N.C. App. at 255, 291 S.E.2d at 340-41 (special damages awarded where the plaintiff "testified she suffered worry, loss of sleep, and emotional problems *that led her to go to the doctor.*"); *Bell*, 247 N.C. at 493, 101 S.E.2d at 387 (affirming special damages award where the plaintiff "offered evidence tending to show that she had suffered special damages, to wit, illness sufficient to require medical and hospital care and expense."). Likewise, in this case, Defendant testified Plaintiff's statements caused her mental anguish and emotional distress that led her to need mental health treatment. She also testified to the actual costs associated with those services. Under our caselaw, this is sufficient—more than a scintilla of evidence—to submit the issue of special damages to the jury.

Plaintiff argues, without support, that Defendant failed to establish special damages because she did not introduce evidence of a medical diagnosis. We know of

no case that so holds. Rather, special damages require only a showing of "pecuniary loss." *See Williams*, 10 N.C. App. at 387, 179 S.E.2d at 322 ("Special damage, as that term is used in the law of defamation, means pecuniary loss, as distinguished from humiliation."). Again, we will not create a requirement for special damages where none clearly exists.

Plaintiff also contends Defendant failed to show his defamatory statements proximately caused Defendant's special damages. "Proximate cause is ordinarily a question of fact for the jury, to be solved by the exercise of good common sense in the consideration of the evidence of each particular case." *Estate of Long v. Fowler*, 378 N.C. 138, 150, 861 S.E.2d 686, 696 (2021) (quoting *McAllister v. Khie Sem Ha*, 347 N.C. 638, 645, 496 S.E.2d 577, 582 (1998)). Here, Defendant testified she sought mental health services from Nesbit after May 2021 to help her "deal[ ] with the fact that *my brother's calling me a liar* and the fact that all of this has bubbled up and surfaced." (emphasis added) Further, she testified she felt she needed mental health treatment because Plaintiff "is attacking me. He's viciously telling me I'm a liar. He's telling everybody I've gone crazy. And so I needed more help." This testimony points to Plaintiff's statements as at least one cause of Defendant's emotional suffering and consequent need for mental health services. Thus, Defendant presented more than a scintilla of evidence that Plaintiff's statements proximately caused her special damages.

Finally, Plaintiff argues the maximum amount of compensatory damages the

jury was entitled to award was $17,000.00—the amount Defendant testified she had incurred seeing various mental health providers. Here, the jury was correctly instructed "Actual damages means fair compensation to any actual loss, hurt, or harm resulting from the defamation including pecuniary damages *and actual harm damages*." The trial court further explained: "You may award pecuniary damages to the extent you find the defendant has suffered such tangible monetary losses. . . . . Actual harm damages include such things as impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering. You may award such actual harm damages to the extent you find the defendant has suffered such actual injury." This is consistent with our caselaw, as this Court has noted: "For a defamation claim, 'compensatory damages include (1) pecuniary loss direct or indirect, *i.e.*, special damages; (2) damages for physical pain and inconvenience; (3) damages for mental suffering; and (4) damages for injury to reputation.' " *Hien Nguyen v. Taylor*, 219 N.C. App. 1, 10, 723 S.E.2d 551, 559 (2012) (quoting *Roth v. Greensboro News Co.*, 217 N.C. 13, 23, 6 S.E.2d 882, 889 (1940)). *See also Hawkins v. Hawkins*, 101 N.C. App. 529, 532, 400 S.E.2d 472, 474-75 (1991) ("We define actual damage to mean some actual loss, hurt or harm resulting from the illegal invasion of a legal right."); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350, 94 S. Ct. 2997, 3012, 41 L. Ed. 2d 789 (1974) ("[A]ctual injury is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and

mental anguish and suffering.").

Here, although Defendant's testimony supports only $17,000.00 in pecuniary loss, the jury was entitled to compensate Defendant for actual harm damages beyond the specific costs she incurred. Further, Defendant's testimony supports actual harm damages. She testified to ongoing mental anguish, nightmares, and impairment of her relationships. Thus, the jury was not limited to awarding Defendant $17,000.00 in compensatory damages.[3]

## Conclusion

Accordingly, for the foregoing reasons, we conclude there was no error in the trial and affirm the Judgment and Orders.


AFFIRMED.

Chief Judge DILLON and Judge ARROWOOD concur.

Report per Rule 30(e).

---

[3] Because we conclude the trial court did not err in denying Plaintiff's Motions for Directed Verdict and for JNOV, we need not address his remaining argument on attorney fees and court costs.